Submitted December 5, 2014, vacated and remanded December 7, 2016

Dawn Osborne WATTS,
*Petitioner,*

*v.*

OREGON STATE BOARD OF NURSING,
*Respondent.*

Oregon State Board of Nursing
1300653; A156115

386 P3d 34

Dawn Osborne Watts filed the briefs *pro se.*

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Carolyn Alexander, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Egan, Judge, and Schuman, Senior Judge.

## SCHUMAN, S. J.

Petitioner seeks judicial review of a final order of the Oregon State Board of Nursing (the board) denying her, by summary determination, a license to practice as a registered nurse in Oregon. The board concluded that petitioner's application included fraudulent documents purportedly showing that she met educational criteria for licensure by graduating from college when, in fact, she never did so. Petitioner does not deny that the board received the application, that she signed it, and that it contained fraudulent documents; she argues, however, that she deserved a hearing instead of a summary determination in order to prove her claim that an unscrupulous criminal filled in and submitted the material without her knowledge or permission. We vacate the board's decision and remand.

In July 2012, the board received an application under the name of Dawn Osborne Watts for licensing as a registered nurse. One of the requirements for obtaining the license is "evidence of having completed, a state approved pre-licensure, Diploma, Associate Degree, Baccalaureate Degree or Master's Degree Program in Nursing." OAR 851-031-0006(1)(a)(B). The application stated that petitioner had obtained the necessary degree from Long Island University (LIU) in Brooklyn, New York, in 2012. A transcript and letter supposedly from LIU accompanied the application, at the end of which was the following statement:

> "I hereby certify that I have read this application. I also certify that the information provided on this application is true and correct and that I have personally completed this application. I am aware that falsifying an application, supplying misleading information or withholding information is grounds for denial or revocation of license/certification."

Petitioner concedes that she signed that statement, although she maintains that the application was blank when she did so and that another person sent it to the board.

A board employee responsible for investigating license applications suspected that the documents "looked very outdated" and "may be fraudulent." The investigator contacted the LIU registrar's office, which, after receiving copies of the documents, confirmed the investigator's

suspicions. As a result, the board issued a Notice of Proposed Denial, citing ORS 678.111(1)(c), which authorizes denial of a license for "[a]ny willful fraud or misrepresentation in applying for or procuring a license," and OAR 851-045-0070(6)(e), authorizing denial for "[r]esorting to fraud, misrepresentation, or deceit during the application process for licensure." Petitioner, through counsel, requested a hearing, asserting, among other things, that a man falsely claiming to be an employee of LIU had defrauded her by collecting $4,000 from her in return for enrollment in a special accelerated program.

The board scheduled a hearing, but before it occurred, the board filed a Motion for Summary Determination, OAR 137-003-0580,[1] alleging once again that petitioner had committed willful fraud or misrepresentation in applying for a license. Petitioner, now *pro se* because her attorney could not obtain *pro hac vice* status, filed a document captioned "Opposition to Motion for Summary Determination." The first sentence began, "Dawn Osborne Watts swears as follows[.]" She repeated her assertion that the board

> "alleged erroneously that I submitted fraudulent documents in support of my license application. They have relied on a bogus transcript from [LIU] to bolster the false allegations. That document was not submitted to Oregon Board of Nursing by me. It was submitted by an unscrupulous individual who claimed to be an employee of LIU."

The document was signed by petitioner and notarized. The board assigned the case to an administrative law judge (ALJ), who granted the board's motion for summary determination. The board voted to accept the ALJ's proposed order without substantive alterations, concluding, "It is appropriate that Ms. Watts'[s] Licensure by Examination Application be denied."

On appeal, petitioner concedes that she never attended LIU and that the documents received by the board are fraudulent. She also concedes that she signed the documents, but maintains that she did so before they were filled

---

[1] This rule and others cited from OAR chapter 137 are adopted by and applicable to the board. OAR 851-001-0005.

out and that she was not the person who filled out or submitted them. Although her appellate brief maintains also that the board reached the wrong conclusion, the actual argument is only that the board erred in granting the motion for summary determination—that, in other words, she was entitled to a hearing. The board responds that her claim of error is not preserved and, even if we reject that argument, that the board's decision to grant summary determination was correct.

The board's contention that petitioner's claim of error is not preserved derives from ORAP 5.45(1), which provides, "No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court and is assigned as error in the opening brief[.]" The board maintains that, despite its reference to a "lower court" and "appeal," the rule applies to judicial review of agency action. We agree. *Thomas Creek Lumber v. Board of Forestry*, 188 Or App 10, 30, 69 P3d 1238 (2003). We part ways with the board, however, when it asserts that failure to file exceptions to the ALJ's proposed final order necessarily precludes judicial review. *See* OAR 137-003-0650(1) ("If the recommended action in the proposed order is adverse to any party or to the agency, the party or agency may file exceptions * * *."). In support of that argument, the board relies on *Becklin v. Board of Examiners for Engineering*, 195 Or App 186, 97 P3d 1216 (2004), *rev den*, 338 Or 16 (2005). In that case, the ALJ issued a proposed order favorable to the petitioner, but the respondent board amended the proposed order by making additional findings of fact. *Id.* at 200. Despite being notified of its opportunity to file exceptions, the petitioner

"chose not to file any exceptions to the amended proposed order. As a result, [the] petitioner never argued to the board that it lacked authority to make the additional findings of fact. Even assuming for the sake of argument that the board erred in making those additional findings, [the] petitioner never gave the board the opportunity to avoid that error in adopting its final order.

"[The p]etitioner's argument that he preserved his assignment of error by arguing to the ALJ that the exceptions apply misses the point. The assignment of error is

not about whether the exceptions apply. It is about whether the board had the authority to address them. [The p]etitioner never advanced that issue until now. Accordingly, it is unpreserved[.]"

*Id.* As we noted, "In general, to preserve a contention for appeal or judicial review, a party must provide the lower court or agency with an explanation of his or her objection that is specific enough to ensure that the court or agency is able to consider the point and avoid committing error." *Id.* at 199-200. In other words, *Becklin* stands for the proposition that the court will not review arguments presented for the first time on judicial review. The holding would apply in a case like *Becklin*, where the board allegedly committed an error for the first time in an amended order, because, in that situation, the petitioner's only opportunity to alert the board to its alleged error is by way of exceptions. *Becklin* does not stand for the proposition, or even imply, that, in other situations such as the one here, failure to file exceptions constitutes a waiver. Indeed, it implies that filing exceptions is not necessary to preserve an argument that is already before the board.

That implication is bolstered by language in the rules governing exceptions to proposed orders. Both OAR 137-003-0645 and OAR 137-003-0650 provide that filing exceptions is optional, and both provide that the agency must give specified information to a party choosing that option. Neither informs a party that filing an exception to a finding or conclusion is necessary in order to file a later petition for judicial review.[2] Likewise, the "Notice of Contested

---

[2] OAR 137-003-0645(5) provides:

"If the recommended action in the proposed order is adverse to any party, the proposed order shall also include a statement that the party may file exceptions and present argument to the agency or, if authorized to issue the final order, to the administrative law judge. The proposed order shall include information provided by the agency as to:

"(a) Where and when written exceptions must be filed to be considered by the agency; and

"(b) When and in what form argument may be made to the official(s) who will render the final order."

OAR 137-003-0650 provides, in part:

"(1) If the recommended action in the proposed order is adverse to any party or the agency, the party or agency may file exceptions and present

Case Rights and Procedures" that the board sends to applicants tells them:

> "The ALJ will issue a proposed order in the form of findings of fact, conclusions of law and recommended Board action. You will be provided with a copy and you will be given an opportunity to make written objections, called 'exceptions,' to the ALJ's recommendations. You will be notified when you may submit written exceptions and arguments."

The applicant is not informed of any adverse consequences if she does not avail herself of the "opportunity" to file exceptions. We conclude that, if an applicant's submissions contain "an explanation of his or her objection that is specific enough to ensure that the court or agency is able to consider the point and avoid committing error," *Becklin*, 195 Or App at 199-200, it is misleading and fundamentally unfair to inform petitioner that filing exceptions is optional, without also informing her that failure to do so deprives her of the right to judicial review. In such situations, the claim of error is preserved, regardless of the fact that the applicant opted not to file exceptions.

That situation obtains here. In her response to the board's "Notice of Proposed Denial of Registered Nurse License," petitioner asserted, among other things, that an unnamed man falsely claiming to be an LIU official took $4,000 from her and "proceeded to make an application to Oregon State Board of Nursing *without her knowledge or consent, or participation* in any application to the State of Oregon." (Emphasis added.) That argument was before the board, and it is the same argument she advances on appeal. She did not have to reassert it in exceptions to the proposed order. We reject the board's argument that her claim of error is not preserved.

argument to the agency or, if authorized to issue a final order, to the administrative law judge.

"(2) The agency shall by rule or in writing describe:

"(a) Where and when written exceptions must be filed to be considered by the agency; and

"(b) When and in what form argument may be made to the official(s) who will render the final order."

Petitioner's argument on the merits, as noted above, is that the board erred by granting the motion for summary determination instead of allowing petitioner to have a full hearing. Such motions are governed by OAR 137-003-0580:

"(1) Not less than 28 calendar days before the date set for hearing, the agency or a party may file a motion requesting a ruling in favor of the agency or party on any or all legal issues (including claims and defenses) in the contested case. * * *

"* * * * *

"(6) The administrative law judge shall grant the motion for a summary determination if:

"(a) The pleadings, affidavits, supporting documents (including any interrogatories and admissions) and the record in the contested case show that there is no genuine issue as to any material fact that is relevant to resolution of the legal issue as to which a decision is sought; and

"(b) The agency or party filing the motion is entitled to a favorable ruling as a matter of law.

"(7) The administrative law judge shall consider all evidence in a manner most favorable to the non-moving party or non-moving agency.

"(8) Each party or the agency has the burden of producing evidence on any issue relevant to the motion as to which that party or the agency would have the burden of persuasion at the contested case hearing.

"(9) A party or the agency may satisfy the burden of producing evidence through affidavits. Affidavits shall be made on personal knowledge, establish that the affiant is competent to testify to the matters stated therein and contain facts that would be admissible at the hearing.

"(10) When a motion for summary determination is made and supported as provided in this rule, a non-moving party or non-moving agency may not rest upon the mere allegations or denials contained in that party's or agency's notice or answer, if any."

Petitioner does not deny that the documents received by the board were fraudulent, nor does she deny that, if she had sent them, the board would have been

justified in denying her license. *See* ORS 678.111(1)(c), (f) (authorizing the board to refuse to issue a license for "willful fraud or misrepresentation in applying for or procuring a license," or for "[c]onduct derogatory to the standards of nursing"); OAR 851-045-0070 (defining "conduct derogatory to the standards of nursing" as including fraud during the application process). Rather, her argument is that granting the motion for summary determination was error because the pleadings and affidavits created a genuine issue as to a material fact: The documents, she argues, assert that she never submitted an application, while the board asserts that she did.

More specifically, the board found as fact that it "received a Licensure by Examination Application (application) *from* [*petitioner*]," that "[*petitioner*] *submitted* a fraudulent letter," and that "*she represented* that she obtained a bachelor['s] degree from LIU." (Emphases added.) Petitioner, by contrast, maintained in her opposition to the motion that she did not make any fraudulent licensing application to the board. There appears, then, to be a disputed material issue of fact. The difficulty, however, arises from OAR 137-003-0580(9) and (10). Subparagraph (9) establishes that a "party or the agency may satisfy the burden of producing evidence through affidavits. Affidavits shall be made on personal knowledge, establish that the affiant is competent to testify to the matters stated therein and contain facts that would be admissible at the hearing." Petitioner's opposition to the motion, in which she asserts that she herself did not submit any document to the board, is made on personal knowledge, by a person competent to testify to that fact (herself), and the assertion would be admissible at the hearing.

Subparagraph (10), however, provides that petitioner, as the nonmoving party, "may not rest upon the mere allegations or denials contained in that party's or agency's notice or answer, if any." Thus, if petitioner's "Opposition to Motion for Summary Determination" is an "answer," her statement is a "mere allegation" and the board did not err in concluding that she "presented no evidence or argument" that could create a disputed issue of fact. If, on the other hand, the document is an "affidavit," then it did create a

disputed issue of fact and the board erred in granting its own motion.[3]

Unfortunately, nothing in Oregon statutes or administrative rules defines "affidavit" or specifies what it must contain. *Black's Law Dictionary* generically defines the term as "[a] voluntary declaration of facts written down and sworn to by the declarant, usu. before an officer authorized to administer oaths." *Black's Law Dictionary* 68 (10th ed 2014). Petitioner's motion in opposition fits that description. It is a sworn declaration of fact, presumably made voluntarily, before a New York notary, who, under New York law, has the requisite authority.[4]

On the other hand, it is not captioned "Affidavit," it is not dated (although it is date-stamped September 18, 2013, well before the notary's license was due to expire), and it is the first and only response to the board's motion—a role usually assumed not by an affidavit, but by an answer. More significantly, it does not conform to the only source of Oregon law that actually establishes criteria for affidavits: the Uniform Trial Court Rules (UTCR). UTCR 2.120 provided at the time petitioner submitted her motion in opposition that an affidavit "must include a sentence, in prominent letters immediately above the signature of the affiant, that is in substantially the same form as the sentence for a declaration under penalty of perjury as specified in ORCP 1 E."[5] ORCP 1 E, in turn, provides that a "'declaration' means a declaration under penalty of perjury." Petitioner's motion in opposition contains no "penalty of perjury" language. Thus, at least insofar as the UTCR informs the meaning of the term "affidavit" in this context, the motion in opposition is not a valid affidavit. Although it is true that lying

---

[3] The board found, and petitioner conceded, that she signed a statement certifying that she "personally completed this application." It could therefore be argued that she engaged in fraud and misrepresentation. However, the board denied petitioner her license because she *submitted* a fraudulent application. If, in fact, she did not submit anything, then the fact that the application contains lies is irrelevant.

[4] "Every notary public duly qualified is hereby authorized and empowered within and throughout the state to administer oaths and affirmations[.]" N.Y. Exec. Law § 135 (McKinney).

[5] The replacement rule, effective after August 1, 2016, is not different in any relevant respect.

on the sworn motion in opposition would subject petitioner to charges of perjury,[6] there is no indication that she was appropriately notified of that fact.

However, there is powerful and, we conclude, dispositive evidence that UTCR 2.120's requirement of a "penalty of perjury" clause does not inform the meaning of "affidavit" in this context: Neither of the affidavits submitted by the board itself contains such a clause. Presuming that no express "penalty of perjury" clause is required, then, we regard the flaws in petitioner's motion in opposition, insofar as it can serve as an affidavit, to be insignificant. To repeat: The rule allowing affidavit evidence provides that "[a]ffidavits shall be made on personal knowledge, establish that the affiant is competent to testify to the matters stated therein and contain facts that would be admissible at the hearing." That rule, of course, states what is minimally necessary; it does not state what else may be required (for example, a sworn statement). Still, it is a strong indication of what the rule regards as important elements, and that indication is supplemented by the fact that the statement is, in fact, sworn and notarized. We conclude that the document qualifies as an affidavit.

Even so, the board argues in its brief on judicial review that "the overwhelming evidence established that the information [in petitioner's application] was not true." That statement does not accurately capture the standard that the board must apply. The board can grant a motion for summary determination only if the relevant documents, including affidavits, create "*no* genuine issue as to any material fact that is relevant to resolution of the legal issue." OAR 137-003-0580(6)(a) (emphasis added). If there is evidence creating a relevant fact issue, then no matter how "overwhelming" the moving party's evidence may be, or how implausible the nonmoving party's version of the historical facts, the nonmoving party, upon proper request, is entitled to a hearing.

Vacated and remanded.

---

[6] "A person commits the crime of perjury if the person makes a false sworn statement * * * in regard to a material issue, knowing it to be false." ORS 162.065.