TOOKEY, J.
*757 Petitioner seeks judicial review of a final order of the Oregon Real Estate Agency in which the agency concluded that petitioner had violated professional standards and then revoked his real estate broker license. Petitioner asserts, among other things, that the agency erred in issuing a final order based on the administrative law judge's (ALJ) grant of the agency's motion for summary determination because petitioner had raised genuine issues of material fact and the agency was not entitled to a favorable ruling as a matter of law. We conclude that the agency was not entitled to summary determination and, accordingly, we reverse and remand.[1]
Because this matter is on review from a grant of summary determination for the agency, we view the evidence in the light most favorable to petitioner, the nonmoving party. Wolff v. Board of Psychologist Examiners , 284 Or. App. 792, 800, 395 P.3d 44 (2017).
Petitioner held an active Oregon real estate broker license until March 31, 2013, when he let it expire. His license was associated with Pacific Commercial Group, LLC, which was a real estate brokerage firm formed by petitioner and his brother-in-law, Richard Baek. Richard and his sister Grace Baek, petitioner's then-wife, held two parcels of property in Oregon through two limited liability companies-Baek 124th LLC and Baek Holdings, LLC (the Baek LLCs). At some point, Grace gave petitioner a 25 percent interest in each of the Baek LLCs, such that Richard held 50 percent, Grace held 25 percent, and petitioner held 25 percent interest in each LLC. Petitioner was also the manager of the Baek LLCs.
In March 2010, the Baek LLCs entered into an exclusive listing agreement with petitioner *475 to sell the Oregon parcels. By the terms of that agreement, it expired on February 28, 2011, but also provided that the owner of the parcels would pay a commission to the broker if,
*758 "within Three Hundred Sixty (360) days after the expiration of this Authorization or any extension hereof, the Property or any interest therein is sold, transferred, or conveyed to any person or entity with whom Broker has negotiated or to whom Broker has submitted the Property prior to such expiration in an effort to effect a transaction ***."
The agreement also provided that,
"[i]f during the term of this Authorization or any extension hereof an escrow is opened or negotiations involving the sale, transfer, or conveyance of the Property have commenced and are continuing, then the term of this Authorization shall be extended for a period through the closing of such escrow, the termination of such negotiations or the consummation of such transaction, provided this Authorization would otherwise have expired during such period."
In his affidavit, petitioner attested that
"I believe that there was a subsequent Listing Agreement which took effect after the [March 2010] Listing Agreement ***. However, I cannot produce the document because Mr. Rutherford, at Richard Baek's request, took all Baek 124th files on May 29, 2012."
In June 2011, the Baek LLCs entered into a purchase and sale agreement with a purchaser for the "front" parcel. That sale required a lot line adjustment and the creation of an easement, which had to be completed before the second "back" parcel could be sold. The sale of the "front" parcel eventually closed in July 2012, and petitioner remained involved in the sale as the broker throughout that time.
In May 2012, petitioner began negotiating with Scott Elliot of Edge Development for the purchase of the "back" parcel. On May 25, 2012, petitioner asked Grace and Mark Rutherford, an employee of Richard, to follow up on an inquiry Elliot had made. In late May or early June 2012, Elliot and Richard signed a letter of intent for Edge to purchase the "back" parcel. Neither the agency nor petitioner submitted evidence to the ALJ as to what transpired with the proposed sale of the "back" parcel to Edge between June and late November 2012.
*759 In November 2012, petitioner and Grace began divorce proceedings.
In December 2012, Elliot and Richard executed a purchase and sale agreement to sell the "back" parcel to Edge. That agreement listed Rob Matthews as the Baek LLCs' "listing licensee" for the sale,[2] and the sale was submitted for escrow to First American Title Company (First American). Matthews was brought in at the end of November to review the purchase and sale paperwork for Richard, but the final terms of the sale had already been agreed to by Elliot and Richard and written up by Elliot before that time.
Before closing, in March 2013, petitioner sent a demand to the escrow agent for a three percent commission on the sale as the broker for the Baek LLCs on the "back" parcel. Petitioner then, through counsel, followed up with a "Notice of Adverse Interest" to First American claiming an interest in the proceeds of the sale, but petitioner informed First American that he did not wish to hold up the closing of the sale itself. First American informed Richard that it could close the sale, but that it would not release sale proceeds until the Baek LLCs and petitioner came to an agreement. Instead of doing that, Richard terminated the escrow with First American and attempted to get Elliot to agree to close the sale outside of escrow. Elliot declined and, ultimately, the sale closed in August 2013 after Elliot sued the Baek LLCs for specific performance.
With regard to the sale of the "back" parcel to Edge, the agency and petitioner submitted conflicting evidence as to the extent *476 of petitioner's involvement. The agency submitted a declaration from Rutherford that had been filed in a separate civil case in which he attested that, on May 29, 2012, petitioner told Rutherford that he was not going to be working on the sale of the "back" parcel and that he would be pulling his broker license from Pacific Commercial Group. The agency also submitted its investigator's interview notes with Elliot, which provided that Elliot said that *760 petitioner told him, at some point after entering into the letter of intent, that he was no longer going to be working on the deal.
Petitioner attested in his affidavit that he did not make the statements to Rutherford about resigning as broker; he did not resign as the broker for the sale to Edge; Richard and Grace knew that he continued to advertise the property as the listing broker as of May 2012, had contacts with Elliot on the sale, and expected a commission on the sale; and he had asked Rutherford and Grace in May to follow up with Elliot because he was busy and needed help and not because he had stopped working as the broker. Petitioner also attested that, "[w]hether or not there is a subsequent Listing Agreement [to the May 2010 Listing Agreement], I was entitled to a commission pursuant to the terms of the written Listing Agreement because I had had multiple contacts with Scott Elliot."
Also in 2013, petitioner, Richard, Grace, and the Baek LLCs became involved in litigation regarding, among other matters, petitioner's interest in the Baek LLCs and his claimed commission on the sale of the "back" parcel. In the course of that litigation, petitioner submitted into discovery a document on which he had forged Grace's signature, which he denied during his deposition. Following his deposition, petitioner corrected his answers about his having created the document. After doing so, the trial court held petitioner in contempt and, as a sanction, dismissed all of his claims with prejudice.
The agency instituted this proceeding to revoke petitioner's broker's license based on the preceding conduct. It alleged that petitioner violated ORS 696.301(6) ("[i]ntentionally interfered with the contractual relations of others concerning real estate or professional real estate activity"), ORS 696.301(7) ("[i]ntentionally interfered with the exclusive representation or exclusive brokerage relationship of another license"), and ORS 696.301(14) ("[c]ommitted an act of fraud or engaged in dishonest conduct substantially related to the fitness of the *** licensee to conduct professional real estate activity"), when he submitted his demand for a commission to First American "when [he] did not have *761 a valid, active listing agreement, and when he was not listed on the sale agreement." Additionally, the agency alleged that petitioner violated ORS 696.301(14)"[b]y forging a contractual document and also committing perjury in connection with the forged document."
The agency moved for summary determination on all three of those grounds, which the ALJ granted. In the proposed order, the ALJ determined that petitioner violated ORS 696.301(6) and (7) when he submitted his demand for a commission because "he did not in fact have a valid, active listing agreement for the property," which made his representations to First American false, and because he deliberately inserted himself into the transaction, which was "disruptive to the transaction" and interfered with "Matthew's exclusive representation of the Baek LLCs." The ALJ also determined that petitioner violated ORS 696.301(14) based on his conduct in the civil litigation that resulted in him being held in contempt. After petitioner filed exceptions to the proposed order that the agency rejected, the agency adopted the ALJ's proposed order as its final order and revoked petitioner's license based on the three violations.
We review a grant of summary determination for legal error. Wolff , 284 Or. App. at 800, 395 P.3d 44. In doing so, we must determine whether the evidence, when viewed in the light most favorable to the nonmoving party-here, petitioner-establishes that "there is no genuine issue as to any material fact that is relevant to the resolution of the legal issue as to which a decision is sought" and the agency "is entitled to a favorable ruling as a matter of law." OAR 137-003-0580(6), (7). We thus must determine whether there was a disputed genuine *477 issue of material fact relevant to whether petitioner violated ORS 696.301(6) and (7),[3] and, if not, whether the agency carried its burden of proof of those violations by presenting evidence "such that all reasonable factfinders would have to conclude that petitioner committed the violations alleged by the [agency]"-viz. , that the agency was entitled to a favorable ruling as a matter of law. Wolff , 284 Or. App. at 800-01, 395 P.3d 44. *762 On review, petitioner argues that the agency was not entitled to summary determination on the allegations that he violated ORS 696.301(6) and (7) because the facts are disputed as to whether he had a valid, existing listing agreement with the Baek LLCs when he began negotiating with Elliot, whether he prevented the closing with Elliot on the original closing date with First American and thus interfered with contractual relations or with any claim for payment that Matthews may have had, and whether Matthews had an exclusive representation agreement with the Baek LLCs or even performed any work that would have entitled Matthews to a commission on the sale.
Viewing the evidence in the light most favorable to petitioner, as we must, we agree with petitioner that the agency was not entitled to summary determination as to plaintiff's alleged violations of ORS 696.301(6) and (7).
First, and most importantly to the bases for the agency's final order, there are disputed issues of fact as to whether petitioner had a valid, existing listing agreement with the Baek LLCs at the time that he began negotiating with Elliot for the sale of the "back" parcel. Petitioner was involved at all times in the sale of the "front" parcel, which resulted in a purchase and sale agreement signed as of June 2011, which would have required contacts and negotiations for the sale to begin before that date. Thus, there is a disputed fact issue of whether petitioner was acting as broker in that sale before the original expiration date of the Listing Agreement-February 28, 2011. Under the express terms of the Listing Agreement, the agreement automatically extended through the closing of any sale for which negotiations were ongoing during the term of the agreement.[4] The closing date for the "front" parcel was in July 2012. Thus, there is a disputed, material fact as to whether the Listing *763 Agreement was extended, by its express terms, through July 2012, which would have covered the time period when petitioner began negotiating with Elliot for the sale of the "back" parcel. And, also by its express terms, the Listing Agreement entitled petitioner to a commission for a sale within 360 days of expiration of the Listing Agreement to anyone with whom petitioner had negotiated during the term of the Listing Agreement.[5] Here, petitioner made his demand for payment of a commission in March 2013, which would have occurred within that time frame, if the Listing Agreement, in fact, was automatically extended through July 2012 under its express terms.
In addition, petitioner, as the broker and the manager of the Baek LLCs, would have been in the best position to know if a new written listing agreement had been executed. Petitioner attested that he believed such an agreement had been executed, but petitioner could not confirm it because he no longer had *478 access to the Baek LLCs' records. The agency presented no evidence regarding the Baek LLCs' records. Contrary to the ALJ's determination, petitioner's sworn affidavit does raise a disputed issue of material fact as to whether a subsequent listing agreement existed that was in effect at the time that petitioner was negotiating with Elliot as the broker for the "back" parcel. See Watts v. Board of Nursing , 282 Or. App. 705, 714, 386 P.3d 34 (2016) ("If there is evidence creating a relevant fact issue, then no matter how 'overwhelming' the moving party's evidence may be, or how implausible the nonmoving party's version of the historical facts, the nonmoving party, upon proper request, is entitled to a hearing.").
Second, viewed in the light most favorable to petitioner, there is evidence that petitioner did not interfere with the original closing date of the sale to Edge. First American notified Richard that it could close the sale, but would hold *764 the proceeds until Richard and petitioner came to an agreement. Richard, however, instead chose to cancel the escrow, which, ultimately, resulted in Elliot having to sue the Baek LLCs for specific performance. The sale to Edge could have closed on time if Richard had not canceled the escrow, in which case the contract between the Baek LLCs and Edge would not have been disrupted. Thus, there is a disputed issue of fact whether petitioner's demand for a commission did interfere with that contract or Matthews's representation of the Baek LLCs.
Finally, in addition to the disputed issues of fact discussed above, there is no evidence in the record of whether Matthews had an "exclusive representation or exclusive brokerage relationship" with the Baek LLCs. The purchase and sale agreement for the "back" parcel to Edge provided only that Matthews was exclusively representing the seller in that transaction; that is, it provided that Matthews was not taking on a duo agency role of representing the buyer and the seller. The purchase and sale agreement provides no information as to whether Matthews had an "exclusive representation or exclusive brokerage relationship" with the Baek LLCs for the "back" parcel. The agency presented no other evidence regarding the relationship between Matthews and the Baek LLCs, except that both Elliot and Richard agreed that Matthews had only been brought in to review the purchase and sale paperwork and had not been involved in any respect with the negotiations or the write up of the purchase and sale agreement. That evidence suggests that Matthews and the Baek LLCs did not have the type of relationship necessary to trigger a violation of ORS 696.301(7).
Because there are disputed issues of fact that are material to whether petitioner violated ORS 696.301(6) and (7), as alleged by the agency, and because the agency did not carry its burden to produce evidence showing that petitioner violated ORS 696.301(7), the ALJ erred in granting summary determination to the agency on those violations, and petitioner is entitled to a hearing.[6]
*765 There is one additional issue that we must address, and that is the agency's claim that we should affirm the revocation of petitioner's license because petitioner does not assert that there is a disputed issue of fact with regard to his violation of ORS 696.301(14). We reject that argument because the agency's order revoking petitioner's license is expressly predicated on petitioner having committed all three violations. Under those circumstances, we must reverse and remand the entire case for further proceedings.
Reversed and remanded.

Because we agree with petitioner that the agency was not entitled to summary determination in this matter, we do not consider petitioner's other two assignments of error.

Specifically, the purchase and sale agreement provided in the preprinted form entitled "Final Agency Acknowledgement" that Matthews is the agent of "Seller exclusively" by checking the box in front of that designation. The only other designation available on the form is "Both Buyer and Seller."

Petitioner does not argue that there are disputed issues of fact relevant to a violation of ORS 696.301(14) based on his conduct that resulted in him being held in contempt in the civil case.

As set out above, the Listing Agreement, which covered both parcels, provides:
"If during the term of this Authorization or any extension hereof an escrow is opened or negotiations involving the sale, transfer, or conveyance of the Property have commenced and are continuing, then the term of this Authorization shall be extended for a period through the closing of such escrow, the termination of such negotiations or the consummation of such transaction, provided this Authorization would otherwise have expired during such period."

As set out above, that part of the Listing Agreement provides that the owner of the parcels would pay a commission to the broker if,
"within Three Hundred Sixty (360) days after the expiration of this Authorization or any extension hereof, the Property or any interest therein is sold, transferred, or conveyed to any person or entity with whom Broker has negotiated or to whom Broker has submitted the Property prior to such expiration in an effort to effect a transaction ***."

Because we reverse the grant of summary determination based on those bases, we do not address petitioner's additional arguments as to why summary determination was not appropriate on his alleged violations of ORS 696.301(6) and (7).