Submitted September 10, 2015, affirmed March 22, 2017

Debra Rae Leslie AUGUSTUS,
*Petitioner,*

*v.*

OREGON STATE BOARD OF NURSING,
*Respondent.*

Oregon State Board of Nursing
1201497; A156473

392 P3d 788

Laura K. Schultz filed the briefs for petitioner.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Jona J. Maukonen, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.

## HADLOCK, C. J.

Petitioner seeks judicial review of a final order of the Oregon State Board of Nursing suspending petitioner's psychiatric mental-health nurse-practitioner certificate for 60 days. On review, we write only to address the arguments that petitioner makes in conjunction with her first assignment of error, in which she challenges the board's determination that she committed fraud.[1] The board contends, among other things, that each of those arguments is unpreserved. We agree and, accordingly, affirm.

We state the facts relevant to petitioner's first assignment of error as the board found them.[2] At the time of the events giving rise to this case—events that involve petitioner's interactions with one particular patient—petitioner was a certified psychiatric mental-health nurse practitioner. Petitioner provided counseling and medication management for the patient beginning in December 2008. The patient was a minor when he began treatment but turned 18 while still under petitioner's care.

At the patient's final session with petitioner in December 2010, petitioner advised the patient's mother that his account balance would need to be paid in full by the time of his next appointment, in January 2011. The patient missed the January 2011 appointment. Later that month, petitioner left a voicemail message on the patient's mother's phone, reminding her of the balance due on the account and advising her that the patient now owed an additional fee for the missed appointment. Another appointment for the patient was scheduled in February. Two days before that scheduled appointment, petitioner again left a voicemail message with the patient's mother reminding her that the balance on the

---

[1] We reject without discussion petitioner's second through fourth assignments of error.

[2] To the extent that petitioner does not challenge the board's factual findings on judicial review, those unchallenged findings are the facts for purposes of our analysis. *Meltebeke v. Bureau of Labor and Industries*, 322 Or 132, 134, 903 P2d 351 (1995). To the extent that petitioner challenges the board's findings in conjunction with her first assignment of error, we reject those challenges for the reasons set forth in this opinion. To the extent that her second through fourth assignments of error incorporate challenges to the board's factual findings, we reject those challenges without discussion.

account needed to be paid before the appointment. On the morning of the scheduled appointment, petitioner left a message for the patient's mother, cancelling the appointment because of the unpaid balance. Later that day, the patient's stepfather left a voicemail for petitioner, informing her, in abusive terms, that she would not be receiving payment and that the patient would seek treatment elsewhere.

The patient made no further attempts to reschedule his appointment with petitioner, and he began receiving treatment elsewhere. A few days after the cancelled February appointment, petitioner left a voicemail message on the patient's mother's phone, stating, in part:

> "[Y]ou have a balance due. You need to be accountable and pay your bill. Um and uh then I will release those records. Um but it will not happen until I can get to it, and um you do need to stop calling me, um don't make any threats because that um * * * you know I can go ahead, too and call the police about you know, your husband talked to me, the last time on the phone. So um pay the balance, find out, be accountable, what the amount is. I have it with me right now. And um it'll all work out just fine. Bye, Bye."

Petitioner had no further communication with the patient's mother or stepfather.

Over the next year, the patient's new care provider attempted unsuccessfully to obtain the patient's records from petitioner. The patient also asked petitioner to send his records to the Navy, but petitioner informed him that he would need to sign a release and pay for copies of his records. In January 2012, the patient's mother filed a complaint with the "federal Office for Civil Rights," asserting that petitioner had wrongfully refused to provide the patient with his records until he paid the balance on his account.

In late 2012, the board issued a "Notice of Proposed 60 Day Suspension of Nurse Practitioner Certificate" to petitioner, based on allegations of fraud and conduct derogatory to the standards of nursing in accordance with ORS 678.111 and OAR 851-045-0070.[3] At petitioner's request, a hearing

---

[3] ORS 678.111 establishes the disciplinary actions the board may take against nursing licenses and the reasons needed for such actions. It provides, in part:

on that notice was held before an administrative law judge (ALJ). Petitioner appeared without counsel and testified on her own behalf. Following the hearing, the ALJ issued a proposed order that determined, among other things, that one of petitioner's February 2011 voicemail message to the patient's mother constituted fraud, for purposes of ORS 678.111(1)(d). The ALJ explained that conclusion as follows:

"ORS 678.111(1)(d) prohibits fraud or deceit in the practice of nursing. Fraud means 'an instance or act of trickery or deceit * * * an intentional misrepresentation * * * for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him * * *.' *Webster's Third New Int'l Dictionary* 904 (unabridged ed 2002). Deceit means 'the act or practice of deceiving (as by falsification, concealment, or cheating) * * * false representation used to defraud another * * *.' (*Id.* at 584.) These definitions indicate that an intentional or false misrepresentation is not enough. There must be an illicit purpose to the statement, such as trickery or cheating, to support a finding of fraud or deceit.

"In the February * * * voice mail message, [petitioner] stated that she would not release Patient's records until the outstanding account balance was paid. [ALJ states an opinion regarding when a provider may lawfully deny a request for records.] [Petitioner's] recorded demand that the account be paid in full before releasing Patient's records was an unlawful demand in which she intentionally misrepresented the law to induce payment on the account balance. [Petitioner's] conduct constituted fraud and deceit in the practice of nursing."

Petitioner, still unrepresented, filed an extensive list of exceptions to the proposed order.

---

"(1) Issuance of the license to practice nursing, whether by examination or by indorsement, of any person may be refused or the license may be revoked or suspended or the licensee may be placed on probation for a period specified by the Oregon State Board of Nursing and subject to such condition as the board may impose or may be issued a limited license or may be reprimanded or censured by the board, for any of the following causes:

"* * * * *

"(d) Fraud or deceit of the licensee in the practice of nursing or admission to such practice.

"* * * * *

"(f) Conduct derogatory to the standards of nursing[.]"

In its final order, the board adopted the ALJ's determination that petitioner had committed fraud; the pertinent part of the final order is materially identical to the part of the ALJ's proposed order quoted above. Ultimately, the board suspended petitioner's certificate for 60 days based on its conclusion that petitioner had committed fraud and had violated ORS 678.111 in other ways.

As noted, petitioner's first assignment of error challenges the board's determination that she committed fraud. She makes three arguments in conjunction with that assignment of error, which we address in turn.

First, petitioner argues that the board applied an incorrect definition of "fraud." Instead of relying on the *Webster's* dictionary definition, petitioner contends, the board should have applied a nine-part common-law test for fraud that has developed in other contexts. *See, e.g., Conzelmann v. N.W.P. & D. Prod. Co.*, 190 Or 332, 350, 225 P2d 757 (1950) (setting forth test). Petitioner did not include that argument in her exceptions to the proposed order. The argument is, therefore, not preserved for judicial review, and it presents no basis for reversal of the final order. *See Watts v. Board of Nursing*, 282 Or App 705, 714, 386 P3d 34 (2016) ("[T]he court will not review arguments presented for the first time on judicial review[.]").

Second, petitioner contends that the board improperly determined only by a preponderance of the evidence that she committed fraud; according to petitioner, the board should have applied a "clear and convincing evidence" standard to that question. Again, petitioner did not include such an argument in her exceptions to the proposed order, which had expressly stated that the board had the burden to establish the alleged violations "by a preponderance of the evidence." Accordingly, the argument is not preserved for our review.

Third, petitioner argues that—no matter what definition of "fraud" or burden of proof applies—the board erred in determining that petitioner committed fraud because no evidence in the record supports that determination. Specifically, in keeping with the dictionary definition of fraud adopted by the board, petitioner contends that

"[t]here was no evidence of a misstatement of fact or law, no evidence of fraudulent intent, no evidence of detrimental reliance, and no evidence of loss or harm." In response, the board argues, in part, that her argument is not preserved. We agree.

"In general, to preserve a contention for appeal or judicial review, a party must provide the lower court or agency with an explanation of his or her objection that is specific enough to ensure that the court or agency is able to consider the point and avoid committing error." *Becklin v. Board of Examiners for Engineering*, 195 Or App 186, 199-200, 97 P3d 1216 (2004), *rev den*, 338 Or 16 (2005).

In asserting that her argument is preserved for judicial review, petitioner points to the detailed exceptions she filed to the ALJ's proposed order. Specifically, she relies on the following statement:

"[T]he [voicemail] message left on [Patient's mother's] phone *** in response to messages left by [Patient's parents], which contained threats, being informed no payment would ever be made, tearing up a check for payment, being called a 'fucking bitch' by stepfather. The [voicemail] I left on [Patient's mother's] cell phone was taken out of context, 'as paying the account balance' had to do with an agreement with [Patient's mother] & services being temporarily suspended *** The [voicemail] was an emotional reaction to the names [Patient's stepfather] called me when he left a message."

Petitioner made additional, similar assertions in her exceptions. But each of those assertions amounted to disagreement with the ALJ's interpretation of the significance of certain events, an explanation of why petitioner responded to the patient's parents as she did, or a contention that the ALJ had taken her statements out of context. Petitioner did, at one point in her many pages of exceptions, assert that "[t]here was absolutely 'no fraud and or deception' involved on my part." But petitioner made that assertion in conjunction with her claim that, "IF 'in fact' I was 'refusing to release the records based on account balance,' the facts I bring to this case 'would have looked much differently.'" In other words, to the extent that petitioner asserted in her exceptions that she had not committed fraud, that assertion was tied to her

contention that her refusal to release the patient's records was not based on his unpaid account balance—petitioner did not then link that assertion to a claimed lack of evidence regarding misstatement, fraudulent intent, detrimental reliance, and harm, as she does on judicial review. Thus, petitioner failed to provide the board with an explanation of her objection to the proposed order that was "specific enough to ensure that the [board could] consider the point and avoid committing error." *Becklin*, 195 Or App at 199-200.

Finally, petitioner briefly asserts that each of her three arguments establishes "errors of law apparent on the face of the record." That bare assertion does not suffice to establish the criteria that an unpreserved argument must meet to qualify for plain-error review:

> "(1) the error is one of law, (2) the error is obvious, not reasonably in dispute, and (3) the error appears on the face of the record, so that we need not go outside the record to identify the error or choose between competing inferences, and the facts constituting the error are irrefutable."

*State v. Corkill*, 262 Or App 543, 551, 325 P3d 796, *rev den*, 355 Or 751 (2014) (internal quotation marks and citation omitted). Nor has petitioner explained why we should exercise our discretion to correct any error that is plain. *See State v. Carr*, 215 Or App 306, 316, 170 P3d 536 (2007), *rev den*, 344 Or 109 (2008) (declining to address an unpreserved argument where the appellant failed "to address the factors governing the exercise of this court's discretion to review asserted plain error"). Accordingly, we decline to review petitioner's unpreserved arguments.

Affirmed.