SHORR, J.
*48 Plaintiff, an individual who has a disability and is wheelchair dependent, sued defendants, a private electrical cooperative (the cooperative) and its president and chairman of the board of directors, under ORS 659A.142(4). That statute prohibits places of public accommodation from discriminating against customers or patrons who are individuals with disabilities. Plaintiff sought damages and injunctive relief after she was unable to attend a board meeting of the cooperative that was scheduled to be held in a conference room that was not wheelchair accessible. The trial court granted summary judgment in defendants' favor. For the reasons explained below, we conclude that plaintiff cannot sustain a claim for damages under ORS 659A.142(4) against defendants. We also conclude that plaintiff's claim for injunctive relief is now moot. Accordingly, we affirm.[1]
I. FACTUAL AND PROCEDURAL BACKGROUND
The relevant factual background is undisputed. Defendant Blachly-Lane County C.E.A. is a private electric cooperative that provides electric power exclusively to its members within a defined service area. To become a member of the cooperative, a person must live or operate a business within the service area, pay a membership fee, agree to purchase electric energy for their home or place of business exclusively from the cooperative, grant certain easements or rights-of-way to the cooperative, and abide by other requirements in the cooperative's bylaws. Potential members must apply for membership, at which point the board of directors will review the application and accept or reject the applicant. The cooperative holds a monthly meeting of the board of directors. Members may attend and participate in those meetings during the "member comment" period. Nonmembers are not permitted to attend the meetings except as the guest of a member and may not participate in the meetings except as an observer.
*49 Plaintiff does not reside or work in the cooperative's service area, and, therefore, is not eligible for membership in the cooperative, cannot purchase electric energy or receive related services from the cooperative, and is not permitted to attend board meetings except as a nonparticipating guest. In 2015, plaintiff was invited to attend an upcoming board meeting by the Lemlers, friends of plaintiff and members of the cooperative. Wayne Lemler was considering running for a seat on the cooperative's board of directors, but he had concerns regarding the cooperative's financial practices. The Lemlers hoped that plaintiff, who is an attorney and has a background in forensic accounting, could provide them with advice based on her observations of the board meeting.
When plaintiff and the Lemlers arrived at the cooperative's headquarters for the meeting, they learned that the meeting would be *703 held in a second-floor conference room, which was not wheelchair accessible. Plaintiff, who depends on a wheelchair for mobility, requested that the meeting be moved to a location on the ground floor so that she could attend in person. Various representatives of the cooperative refused to relocate the meeting and instead offered telephonic access on the ground floor. Plaintiff insisted that she was allowed to attend the meeting in person and that, by excluding her, the cooperative was violating laws that protect individuals with disabilities. Ultimately, rather than proceed or relocate, the cooperative cancelled the meeting.
Shortly thereafter, plaintiff filed a formal complaint against defendants with the Bureau of Labor and Industries (BOLI), alleging that defendants had violated ORS 659A.142(4).[2] Under that statute,
"[i]t is an unlawful practice for any place of public accommodation, resort or amusement as defined in ORS 659A.400, or any person acting on behalf of such place, to make any distinction, discrimination or restriction because a customer or patron is an individual with a disability."
*50 BOLI investigated and issued a Notice of Substantial Evidence. Specifically, BOLI found that there was "substantial evidence" that defendants had "violated ORS 659A.142 in making a restriction based on Complainant's disability" based on the fact that defendants had offered plaintiff only "physically segregated" access to the meetings and defendants' failure to provide BOLI with a "compelling reason to believe that relocating the meeting *** would have resulted in a significant difficulty or expense." Although BOLI concluded that the cooperative is a place of public accommodation and plaintiff is an individual with a disability, it does not appear that BOLI considered whether plaintiff was, in fact, an aggrieved party under ORS 659A.142(4), that is, whether she was a "customer or patron" of the cooperative. Subsequent efforts at conciliation between plaintiff and defendants failed. At that point, BOLI chose not to bring formal charges against defendants and closed the case.[3]
After the close of her BOLI case, plaintiff brought her civil action against defendants, in which she alleged that she was "denied public accommodation due to her disability" in violation of ORS 659A.142(4).[4] Plaintiff sought damages for emotional distress and requested injunctive relief in the form of a "decree" requiring that the cooperative hold future board meetings in an "accessible location."
Defendants moved for summary judgment, arguing that plaintiff lacked standing to pursue her claims against defendants. The trial court granted defendants' motion, and plaintiff appealed. We review a trial court's grant of summary judgment for legal error, and we will affirm if there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Balzer v. Moore , 293 Or. App. 157, 159, 427 P.3d 193 (2018). In determining whether the court erred in granting summary *51 judgment, "we view the facts and all reasonable inferences that may be drawn from them in the light most favorable to the nonmoving party-in this case, plaintiff." Eads v. Borman , 234 Or. App. 324, 326, 227 P.3d 826 (2010).
II. PLAINTIFF'S CLAIM FOR DAMAGES
As described, plaintiff brought an action for money damages against defendants under ORS 659A.142(4), in which she alleged that *704 defendants had unlawfully discriminated against her on the basis of her disability. Under ORS 659A.142(4),
"[i]t is an unlawful practice for any place of public accommodation, resort or amusement as defined in ORS 659A.400, or any person acting on behalf of such place, to make any distinction, discrimination or restriction because a customer or patron is an individual with a disability."
"Public accommodation," means, in relevant part, "any place or service offering to the public accommodations, advantages, facilities or privileges whether in the nature of goods, services, lodgings, amusements, transportation or otherwise." ORS 659A.400(1)(a).
Defendants argued at summary judgment that plaintiff lacked standing to bring her claim under ORS 659A.142(4) because the cooperative is not a place of public accommodation and because plaintiff did not suffer any actionable harm. The summary judgment hearing consisted only of those same arguments. The trial court did not rule at the hearing, and its subsequent order granting defendants' motion did not explain the basis for its ruling. But, to the extent that the trial court granted defendants' motion because it concluded that plaintiff lacked standing to bring her claim-and we have no basis to conclude that the court ruled as it did for some other reason-the court erred.
In Eckles v. State of Oregon, 306 Or. 380, 760 P.2d 846 (1988), the Supreme Court provided the following explanation of standing:
"[T]wo distinct concepts of standing must be distinguished. Ordinarily, 'standing' means the right to obtain an adjudication. It is thus logically considered prior to *52 consideration of the merits of a claim. To say that a plaintiff has 'no standing' is to say that the plaintiff has no right to have a tribunal decide a claim under the law defining the requested relief, regardless whether another plaintiff has any such right. When this court has used the term 'standing,' the term has for the most part been used in this sense. ***
"In contrast, 'standing' is also sometimes used to refer to the existence of a substantive personal right. Used in this sense, 'standing' is concerned with the merits of a claim. To say that a plaintiff has 'no standing' is to say that no right of the plaintiff was violated, regardless whether the conduct of a defendant was in general unlawful or unlawful as to some other person. This use of 'standing' should be avoided because it easily confuses the right to obtain an adjudication of a claim for relief with the right to obtain the relief itself."
Id. at 383-84, 760 P.2d 846 ; see also MAN Aktiengesellschaft v. DaimlerChrysler AG , 218 Or. App. 117, 121, 179 P.3d 675 (2008) ("The decisive issue for standing * * * is not whether a party's claims are correct but whether the party may obtain a judicial determination of their correctness.").
Plaintiff in this case had standing to seek a judicial determination of her claims. Under ORS 659A.885(1), "any person claiming to be aggrieved by an unlawful practice" under a number of statutes, including ORS 659A.142(4), may file a civil suit seeking injunctive relief and compensatory damages. (Emphasis added.) Here, plaintiff claimed that the cooperative unlawfully discriminated against her on the basis of her disability when it excluded her from in-person attendance at its board meeting. That is all that is required for plaintiff to have standing under ORS 659A.885. Whether the cooperative is a place of public accommodation and whether plaintiff was actually aggrieved by the violation of a substantive right that the legislature had conferred upon her are issues that relate, here, to the merits of plaintiff's claim. Whatever the merits of plaintiff's claim, the legislature has conferred broad standing to "any person" who "claim[s] to be aggrieved" by an unlawful discriminatory practice defined in ORS 659A.142(4), among other statutes. ORS 659A.885(1).
*53 Although the trial court erred by granting defendants' motion for summary judgment based on an erroneous conception of standing, defendants present a slightly different basis for affirmance on appeal. Defendants argue that plaintiff lacks standing because ORS 659A.142(4) prohibits discrimination only against individuals with disabilities who are "customers" or "patrons" of a place of public accommodation, and plaintiff was neither a customer nor a patron of the *705 cooperative. As described, plaintiff has standing to pursue her claims. However, if the record confirms that plaintiff was, in fact, not at any relevant time an actual or even potential "customer or patron" of the cooperative based on a correct interpretation of those statutory terms, her claim for damages would still fail as a matter of law, and summary judgment would still be appropriate. Although the standing argument cannot succeed, framed slightly differently, defendant's argument may lead to the conclusion that plaintiff cannot prove a necessary element of her claim-that she is an actual or potential "customer or patron" of defendants' under ORS 659A.142(4).
We begin with an analysis of ORS 659A.142(4) to determine the legislature's intention when it established that places of public accommodation may not discriminate against "a customer or patron who is an individual with a disability" on the basis of that disability. In light of our interpretation, we then conclude that it is appropriate to affirm the trial court's order granting summary judgment to defendants on the alternative basis described above. See Outdoor Media Dimensions, Inc. v. State of Oregon , 331 Or. 634, 659-60, 20 P.3d 180 (2001) (describing alternative basis review).
A. Interpretation of ORS 659A.142(4)
When interpreting a statute, we examine the text and statutory context, as well as the legislative history to the extent that it is helpful, to discern the legislature's intention in enacting the statute.[5] State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009).
*54 1. Text of ORS 659A.142(4)
We begin with the text. As described, ORS 659A.142(4) prohibits places of public accommodation from discriminating against a "customer or patron" because he or she is an individual with a disability. The statute does not define the words "customer" or "patron." However, there is no indication that the legislature intended those words to mean something different from their "plain, natural, and ordinary meaning," and so we look to dictionaries in use at the time the statute was enacted to determine their "ordinary meaning." See Comcast Corp. v. Dept. of Rev. , 356 Or. 282, 295-96, 337 P.3d 768 (2014).
In 1973, the legislature first enacted the prohibition on discrimination by a place of public accommodation against a "customer or patron" on the basis of a disability. See Or. Laws 1973, ch. 660, § 7. Contemporaneous definitions of "customer" include "one that purchases some commodity or service," and "one that patronizes or uses the services (as of a library, restaurant, or theater) : CLIENT ." Webster's Third New Int'l Dictionary 559 (unabridged ed. 2002). Other common definitions included a "buyer, purchaser, or patron." Black's Law Dictionary 462 (4th ed. 1968). Contemporaneous definitions of "patron" are not dissimilar and include "a steady or regular client, as an habitual customer or merchant," Webster's at 1656, and "a regular customer," Black's at 1283.
2. Context of ORS 659A.142(4)
In addition to the statutory text, we also look to the immediate and broader statutory context to discern the intention of the legislature. Gaines , 346 Or. at 171, 206 P.3d 1042.
a. Immediate context
Beginning with the immediate context of ORS 659A.142(4), we note that, while the legislature did not prohibit places of public accommodation from discriminating against any "person" or "individual" with a disability, the legislature did use the more inclusive term "individual" in other subsections of the same statute. For example, ORS 659A.142(2) prohibits employment agencies from refusing to *55 refer for employment "any individual because that individual has a disability," and ORS 659A.142(5) prohibits the state government from excluding "an individual" from "services, programs or activities" of state government on the basis of disability. The contrast between those broadly inclusive references to "individuals" and the narrower *706 and more specific reference to "customer or patron" in ORS 659A.142(4) suggests that the legislature acted purposefully when it enacted the latter's comparatively limited language and did not intend to encompass a wider range of all individuals.
b. Broader context
The broader statutory context similarly does not support the idea that the legislature intended ORS 659A.142(4) to reach individuals who are not even potential "customers" or "patrons." Although the broader context is largely silent on that issue, three particular elements are worth noting.
(1) Federal lockstep statute, ORS 659A.139
Under ORS 659A.139, Oregon courts must construe ORS 659A.103 to 659A.145"to the extent possible in a manner that is consistent with any similar provisions of the federal Americans with Disabilities Act [ADA] of 1990, as amended by the federal ADA Amendments of 2008 and as otherwise amended." We have previously explained that ORS 659A.139 is a "lockstep" statute that "requires that certain Oregon statutes that prohibit discrimination against people with disabilities be construed consistently with similar ADA provisions to the extent possible." Johnson v. BOLI , 290 Or. App. 335, 340, 415 P.3d 1071, rev. den. , 363 Or. 599, 427 P.3d 186 (2018).
For example, in Johnson , we considered an appeal of a final order in which BOLI had determined that a store owner had violated ORS 659A.142(4) when she refused to allow an individual with a disability to enter the store with her service dogs. Because the version of Oregon's statutes in effect at the time "did not include provisions related to allowing service dogs in places of public accommodation," we cited the "lockstep" statute and approved BOLI's reliance on ADA provisions related to service animals. 290 Or. App. at 340-41, 415 P.3d 1071. Thus, it was both possible and appropriate to construe the protections afforded by ORS 659A.142(4) consistently with *56 similar protections provided by the ADA. See also Honstein v. Metro West Ambulance Service, Inc. , 193 Or. App. 457, 465-66, 90 P.3d 1030, rev. den. , 337 Or. 327, 99 P.3d 290 (2004) (concluding that the trial court did not err when giving a challenged jury instruction as to what constituted a "reasonable accommodation" under Oregon law where the instruction was consistent with the United States Supreme Court's interpretation of a similar provision of the federal ADA (citing ORS 659A.139 )).
However, ORS 659A.139 does not require absolute symmetry between our statutory protections for individuals with disabilities and those afforded by the ADA. See Evans v. Multnomah County Sheriff's Office , 184 Or. App. 733, 743, 57 P.3d 211 (2002), rev. den. , 335 Or. 180, 63 P.3d 27 (2003) (" ORS 659A.139 requires consistency with federal law only 'to the extent possible.' " (Emphasis added.)). To the extent that a particular provision of our statutory scheme cannot be construed consistently with similar provisions in the ADA, we do not look to the ADA and case law interpreting it to determine the meaning or scope of our laws.
The statutory language at issue in this case-the prohibition in ORS 659A.142(4) on discrimination by places of public accommodation against "a customer or patron who is an individual with a disability"-cannot be read consistently with its ADA counterpart. Under Title III of the ADA, "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 USC § 12182(a) (emphasis added). Federal courts have taken an expansive view of that language. For example, the United States Court of Appeals for the Ninth Circuit has concluded that the ADA's "general prohibition against discriminating [by a place of public accommodation] on the basis of disability" protects "disabled individuals" generally, not just "clients or customers" thereof. Molski v. M.J. Cable, Inc. , 481 F.3d 724, 733 (9th Cir. 2007) (citing PGA Tour v. Martin , 532 U.S. 661, 678-79, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001) ); see also Menkowitz v. Pottstown Memorial Medical Center , 154 F.3d 113, 121 (3d Cir. 1998) ("The operative rule announced in Title III speaks not in *707 terms of 'guests,' 'patrons,' 'clients,' *57 'customers,' or 'members of the public,' but instead broadly uses the word 'individuals.' "). As a result, an individual with a disability might have a successful claim against a place of public accommodation under Title III of the ADA regardless of whether he or she was an actual or potential customer or patron because the broadly inclusive language of that statute plainly provides for that possibility.
On its face, ORS 659A.142(4) protects a more specific and limited subset of individuals than Title III. In direct contrast to the Title III protections for "individuals," Oregon's public accommodations law speaks solely in terms of "customers" and "patrons." Although we must read ORS 659A.142(4) consistently with Title III of the ADA "to the extent possible ," the comparatively narrow language of our statute is not coextensive with the more inclusive language used in Title III. It is not possible to read the two consistently without disregarding the specific, narrow text of our statute.
(2) Statutory Policy, ORS 659A.103
Statements of statutory policy are considered useful context for interpreting a statute. Sundermier v. PERS , 269 Or. App. 586, 595, 344 P.3d 1142 (2015). Under ORS 659A.103,
"(1) It is declared to be the public policy of Oregon to guarantee individuals the fullest possible participation in the social and economic life of the state, to engage in remunerative employment, to use and enjoy places of public accommodation, resort or amusement, to participate in and receive the benefits of the services, programs and activities of state government and to secure housing accommodations of their choice, without discrimination on the basis of disability.
"(2) The guarantees expressed in subsection (1) of this section are hereby declared to be the policy of the State of Oregon to protect, and ORS 659A.103 to 659A.145 shall be construed to effectuate such policy."
That statement of policy compels us to interpret statutes under ORS chapter 659A as broadly as the specific language of those statutes allow. We recognize, as did the legislature, the importance of ensuring that individuals with disabilities are not prevented from fully participating *58 "in the social and economic life of the state" by virtue of their disability. But, when interpreting a statute, we cannot ignore the specific language enacted by the legislature in favor of general policy pronouncements.
With that in mind, we cannot read the specific reference in ORS 659A.142(4) to individuals with disabilities who are "customers" or "patrons" of places of public accommodation to implicitly include all other individuals with disabilities who are not even potential customers or patrons. We readily accept that a more expansively worded statute would better effectuate the policy preference evinced by the legislature in ORS 659A.103. But we also presume that the legislature chose the language that it did in ORS 659A.142(4) purposefully and that the text of a statute is the best indicator of the legislature's intent. Oregon Trucking Assns. v. Dept. of Transportation , 364 Or. 210, 220, 432 P.3d 1080 (2019). As a result, the legislature's statement of statutory policy in ORS 659A.103 does not permit us to expand the protections afforded by ORS 659A.142(4) to individuals who are not "customers" or "patrons" of a place of public accommodation.
(3) Statutory policy, ORS 659A.403
A final piece of statutory context that suggests that we must read the legislature's reference to "customers" and "patrons" in ORS 659A.142(4) narrowly is ORS 659A.403. Under that statute,
"all persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation without any distinction, discrimination or restriction on account of race, color, religion, sex, sexual orientation, national origin, marital status or age."
ORS 659A.403(1).
The legislature first enacted those rights and protections in 1953, at which time the statute applied to individuals based on their *708 "race, religion, color [and] national origin."[6] Or. Laws 1953, ch. 495, § 1. In 1973, the legislature amended the statute to include sex and marital status. *59 Or. Laws 1973, ch. 714, § 1. Subsequent amendments in 2003 and 2007 added references to age, Or. Laws 2003, ch. 521, § 1, and sexual orientation, Or. Laws 2007, ch. 100, § 5, respectively. To this day, a reference to "disability" is notably absent from that otherwise broadly inclusive list.
It is not apparent why the legislature has not yet taken the opportunity to extend the rights described in ORS 659A.403 to all persons without any distinction or discrimination on account of disability. In the absence of any such statutory language, however, we are left with the legislature's reference to only those individuals with disabilities who are "customers" and "patrons" of a place of public accommodation in ORS 659A.142(4). Accordingly, although there may be strong policy arguments in favor of amending ORS 659A.403(1) to include individuals with disabilities, we cannot read into that statute a term that the legislature has thus far not added in its several amendments. Likewise, we cannot read ORS 659A.142(4) and its reference to "customers" and "patrons" any more broadly than those terms allow despite the obvious policy preference evinced by the legislature in ORS 659A.403(1) to generally require places of public accommodation to be broadly accessible to "all persons."
B. Alternative Basis to Affirm
We now turn to whether, in light of the foregoing statutory analysis, we should affirm the trial court's order granting summary judgment to defendants on the alternative basis that plaintiff was not, at any relevant time, a "customer or patron" of the cooperative or even a potential "customer or patron." We may exercise our discretion to affirm on an alternative basis only if, (1) the facts of the record are sufficient to support the alternative basis for affirmance; (2) the trial court's ruling is consistent with the view of the evidence under the alternative basis for affirmance; and (3) the record is materially the same as the one that would have been developed had the prevailing party raised the alternative basis for affirmance below. Outdoor Media Dimensions, Inc. , 331 Or. at 659-60, 20 P.3d 180. Here, each of those requirements is met.
First, the facts in the record are sufficient to establish that plaintiff was not, at any relevant time, an actual *60 or even potential "customer or patron" of the cooperative. The undisputed evidence at summary judgment established that plaintiff is not a member of the cooperative, nor has she ever been eligible to become a member. As noted, plaintiff did not reside or work in the cooperative's service area and, therefore, could not be a member of the cooperative. As a result, at the time of the board meeting, plaintiff was not capable of patronizing or purchasing services from the cooperative, which sells electric power and provides related services exclusively to its members. Plaintiff averred to the trial court that she wished to attend the board meeting solely to observe and provide advice to the Lemlers based on her observations. Plaintiff did not present any evidence that she had attempted to engage with the cooperative, attend the board meeting, or enter the cooperative's headquarters for any reason even tangentially related to purchasing goods or services offered by the cooperative, or that she had the potential ability to engage with the cooperative for that purpose.
Second, the trial court's summary judgment ruling is consistent with our view of the evidence under that alternative basis. Where there is no factual dispute that a plaintiff in an action brought under ORS 659A.142(4) is not a "customer or patron," the defendant in the action is entitled to judgment in its favor as a matter of law because the "customer or patron" status is an essential element of the claim. Accordingly, where the plaintiff is not a "customer or patron" of the place of public accommodation, summary judgment is warranted on that basis alone.
*709 Finally, we acknowledge that the third criterion-that the record is materially the same as the one that would have been developed had the prevailing party raised the alternative basis for affirmance below-is particularly important in the summary judgment context. Eklof v. Steward , 360 Or. 717, 736, 385 P.3d 1074 (2016). As the Supreme Court explained in Eklof , we cannot affirm an order granting summary judgment on an alternative basis raised for the first time on appeal where "the opposing party had no reason to adduce evidence" on the issue at summary judgment. Id . Accordingly, our ability to engage *61 in alternative basis review in an appeal from a trial court's grant of summary judgment is necessarily limited.
Here, notwithstanding the limitations noted by Eklof , we conclude that the record in this case would not have developed differently had defendants raised the argument below that plaintiff could never succeed in her claim because she was not a potential or actual customer of the cooperative. Had defendants brought that argument to the trial court's attention at summary judgment, plaintiff could not have developed a different record with evidence that she was or could be a customer or patron of the cooperative. In her response to defendant's request for admissions, plaintiff admitted that she does not reside or work in the cooperative's service area and that she is ineligible to receive electrical services from the cooperative. Those admissions confirm that plaintiff was not eligible to be a customer or patron of the cooperative and that defendants would be entitled to summary judgment as a matter of law. See Brockway v. Allstate Property and Casualty Ins. Co. , 284 Or. App. 83, 95, 391 P.3d 871 (2017) (applying Eklof and Outdoor Media Dimensions, Inc. , in the summary judgment context and concluding that the party opposing summary judgment would have created the same factual record had the issue been raised in the trial court).
In sum, the trial court would not have erred had it granted summary judgment to defendants based on an argument that plaintiff was incapable of proving an essential element of her claim for damages-that she was a "customer or patron" of the cooperative. Although there may be strong policy arguments for ensuring access under ORS 659A.142(4) to all persons or visitors to public accommodations, we cannot read the specific statutory reference to "customers" and "patrons" in ORS 659A.142(4) to broadly encompass all individuals with a disability who, like plaintiff, may wish to enter and interact with a place of public accommodation in some capacity other than that of an actual or potential customer or patron. See PGE v. Bureau of Labor and Industries , 317 Or. 606, 611, 859 P.2d 1143 (1993) (stating that, when interpreting the text of a statute, we consider rules of statutory construction that bear directly on how to *62 read the text, including "the statutory enjoinder not to insert what has been omitted"); ORS 174.010 ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted."). As a result, plaintiff cannot prevail on her claim for damages under ORS 659A.142(4). Based on our interpretation of ORS 659A.142(4) and our assessment of the record under Outdoor Media Dimensions, Inc. , we conclude that it is appropriate to exercise our discretion to affirm the trial court's summary judgment ruling on that alternative basis.
III. PLAINTIFF'S CLAIM FOR INJUNCTIVE RELIEF
In addition to her claim for damages, plaintiff sought from the trial court a "decree *** requiring [defendants] to hold all future Board of Directors meetings in an accessible location where Plaintiff or any disabled member or guest can attend in person." On appeal, defendants contend that that claim is now moot because the cooperative has since relocated to a different headquarters and uses a ground-floor conference room that complies with the accessibility requirements of the ADA for its board meetings.
As a general rule, a challenge becomes moot "when a court decision will no longer have a practical effect on the rights of the parties." Brownstone Homes Condo. Assn. v. Brownstone Forest Heights, LLC , 358 Or. 26, 30, 361 P.3d 1 (2015) (internal *710 quotation marks omitted). One exception to our mootness doctrine is that the "mere voluntary cessation of a challenged practice in a context in which the practice may be resumed does not render a claim challenging that practice moot." Safeway, Inc. v. OPEU , 152 Or. App. 349, 357, 954 P.2d 196 (1998) ; see also Tanner v. OHSU , 157 Or. App. 502, 510, 971 P.2d 435 (1998), rev. den. , 329 Or. 528, 994 P.2d 129 (1999) (explaining that voluntary cessation of a challenged practice does not moot a claim where "wrongdoers could cease their wrongdoing as soon as complaints are filed and resume the wrongdoing as soon as the complaints are dismissed for being moot"). That exception "is best understood to apply in cases in which the challenged 'practice' is one that the defendant can readily cease-in an effort to moot the challenge-and then resume again." *63 Progressive Party of Oregonv. Atkins , 276 Or. App. 700, 709, 370 P.3d 506, rev. den. , 360 Or. 697, 388 P.3d 713 (2016). More specifically, it applies "only where the defendants maintain that they have a legal right to resume the challenged conduct and a court determines that a future dispute is likely." Id. (emphasis in original). Thus, a claim for injunctive relief can be mooted by the voluntary cessation of the challenged conduct only if "it is clear that the allegedly illegal behavior could not reasonably be expected to recur." Assoc. Reforestation v. State Workers' Comp. Bd. , 59 Or. App. 348, 350, 650 P.2d 1068, rev. den. , 59 Or. 348 (1982).
Here, the undisputed facts are that the cooperative has permanently relocated its headquarters to a new building and no longer holds meetings in the building that plaintiff was unable to access fully. Defendants have submitted a declaration under oath that the former building has been largely gutted and that the second-floor conference room could not be used for meetings without substantial and costly renovations, which defendants have no plans to undertake. Defendants have also presented evidence that the new building complies with the ADA and that the cooperative's board meetings are now fully accessible to individuals who rely on wheelchairs. Plaintiff does not present any evidence refuting defendants' evidence of the accessibility and permanence of its new headquarters, including the location of its board meetings.
From those facts, we conclude that defendants have voluntarily ceased the challenged conduct-namely, the effective exclusion of individuals with certain disabilities from in-person attendance at board meetings-and that that behavior cannot reasonably be expected to recur. Accordingly, plaintiff's claim for injunctive relief is moot, because a ruling in her favor, even assuming that she could prevail on the merits, would have no practical effect on her rights.
Affirmed.

We address the substance only of plaintiff's second assignment of error. We reject plaintiff's first and third assignments of error because those assignments do not constitute challenges to a ruling of the trial court. ORAP 5.45(3) ("Each assignment of error must identify precisely the legal, procedural, factual, or other ruling that is being challenged.").

Plaintiff's right to file a formal complaint with BOLI is provided by ORS 659A.820(2), under which "[a]ny person claiming to be aggrieved by an alleged unlawful practice may file with the Commissioner of [BOLI] a verified written complaint *** [that] set[s] forth the acts or omissions alleged to be an unlawful practice."

Under ORS 659A.845, the commissioner of BOLI "may prepare formal charges" based on a finding of substantial evidence that a party engaged in an unlawful discriminatory practice. The reasoning for BOLI's decision not to prepare formal charges is not clear from the record.

Plaintiff's right to file a civil action against defendants is provided by ORS 659A.885(1), under which "[a]ny person claiming to be aggrieved by an unlawful practice specified in subsection (2) of this section[, including a violation of ORS 659A.142(4),] may file a civil action in circuit court."

The parties have not cited and we have not found any legislative history that is helpful to our resolution of this case.

The statute first appeared as former ORS 30.670 (1953), renumbered as ORS 659A.403 (2001).