Argued and submitted June 6, 2018; reversed and remanded July 1, 2020

Gary STACHLOWSKI,
in his capacity as Trustee of the:
Thomas P. Moyer Irrevocable Trust for
the Benefit of Ashley Thrift,
the Thomas P. Moyer Irrevocable Trust for
the Benefit of Michael Thrift,
the Thomas P. Moyer Irrevocable Trust for
the Benefit of Ian Moyer, and
the Thomas P. Moyer Irrevocable Trust for
the Benefit of Patrick Moyer,
*Plaintiff-Respondent,*
*v.*

1000 BROADWAY BUILDING
LIMITED PARTNERSHIP,
an Oregon limited partnership,
*Defendant-Respondent,*
*and*

FIRST REPUBLIC BANK,
a California corporation,
dba First Republic Trust Company,
*Defendant-Appellant.*

Multnomah County Circuit Court
16CV03764; A164678

470 P3d 376

This appeal involves a dispute over fees assessed by defendant First Republic Bank (First Republic) when managing the 1000 Broadway Building in downtown Portland. Plaintiff is the trustee of a number of trusts that own a minority interest as limited partners in 1000 Broadway Building Limited Partnership (1000 Broadway Building LP), which in turn owns the 1000 Broadway Building. Plaintiff brought a derivative action on behalf of 1000 Broadway Building LP against First Republic for, among other claims, conversion, money had and received, and unjust enrichment, alleging that First Republic wrongfully exacted trustee fees and attorney fees from the limited partnership. Plaintiff filed a motion for summary judgment. First Republic opposed the motion for summary judgment and filed a petition to compel arbitration. 1000 Broadway Building LP, a nominal party to the litigation, joined that petition and made a procedural argument urging the court to consider the petition to compel arbitration before considering plaintiff's motion for summary judgment. Later 1000 Broadway Building filed a reply brief that took a substantive position in support of First Republic's petition. The court denied First Republic's petition on the merits, determined that 1000 Broadway Building's subsequent joinder was both limited to procedural

issues and now moot, and struck 1000 Broadway Building LP's reply brief. 1000 Broadway Building LP, but not First Republic, then filed an interlocutory appeal of that order. While that appeal was pending, the court granted plaintiff summary judgment on its conversion claim against First Republic. First Republic now appeals that summary judgment ruling, asserting that (1) the trial court lacked jurisdiction to rule on plaintiff's summary judgment motion while 1000 Broadway Building LP's interlocutory appeal was pending and (2) the court erred when it granted plaintiff's motion for summary judgment. *Held*: The trial court had jurisdiction to proceed to summary judgment. However, the court erred when it granted summary judgment to plaintiff on its conversion claim against First Republic, because there are disputed issues of material fact to be resolved by the factfinder.

Reversed and remanded.

Kathleen M. Dailey, Judge.

Matthew J. Kalmanson argued the cause for appellant. Also on the brief were Janet M. Schroer and Hart Wagner LLP.

Bruce H. Cahn argued the cause for respondent Gary Stachlowski. Also on the brief were Brad T. Summers and Lane Powell PC.

No appearance for respondent 1000 Broadway Building Limited Partnership.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

SHORR, J.

Reversed and remanded.

**SHORR, J.**

This appeal involves a dispute over fees assessed by First Republic Bank (First Republic), the trustee to the Thomas P. Moyer Revocable Living Trust (TPM Living Trust), when managing the 1000 Broadway Building, a downtown Portland building that was developed by the late Thomas P. Moyer Sr. The 1000 Broadway Building is not an asset of the TPM Living Trust, but the TPM Living Trust is a remote owner of a small percentage interest in the 1000 Broadway Building and effectively controls the management of the 1000 Broadway Building. The management and ownership structure of the 1000 Broadway Building is quite complex and will be discussed in greater detail below. For the purpose of this introduction, it is sufficient to note that plaintiff is the trustee of a number of trusts that own a minority interest as limited partners in the 1000 Broadway Building Limited Partnership (1000 Broadway Building LP), which, in turn, owns the 1000 Broadway Building.

Plaintiff filed a derivative action on behalf of 1000 Broadway Building LP against defendant First Republic for, among other claims, conversion, money had and received, and unjust enrichment. Plaintiff alleged that First Republic had wrongfully exacted trustee fees and attorney fees from the limited partnership.[1] During the litigation, plaintiff indicated that it was prepared to seek summary judgment and requested permission from the trial court to file its summary judgment documents under seal. At the same time, taking the position that the court was not the proper forum for this dispute, First Republic filed a petition to compel arbitration. 1000 Broadway Building LP subsequently joined in that petition and filed a reply brief in support of First Republic's petition to compel arbitration. The trial court denied First Republic's petition on the merits, determined that 1000 Broadway Building LP's subsequent joinder was both limited to procedural issues and now moot, and struck 1000 Broadway Building LP's reply brief. 1000

---

[1] Plaintiff also named 1000 Broadway Building LP as a nominal defendant, but that partnership is also effectively a plaintiff for whose benefit the case was purportedly filed. At the conclusion of the litigation in the trial court, 1000 Broadway Building LP was added as a judgment creditor to the limited judgment that gave rise to this appeal.

Broadway Building LP, but not First Republic, then filed an interlocutory appeal of that order.[2] While that appeal was pending, the court proceeded with considering plaintiff's motion for summary judgment and ultimately granted plaintiff summary judgment on its conversion claim against First Republic.[3]

First Republic now appeals that summary judgment ruling, asserting that (1) the trial court lacked jurisdiction to rule on plaintiff's summary judgment motion while 1000 Broadway Building LP's interlocutory appeal was pending and (2) the court erred when it granted plaintiff's motion for summary judgment. For the reasons explained below, we conclude that the court had jurisdiction to proceed to summary judgment, but the court erred when it granted summary judgment to plaintiff on its conversion claim against First Republic, because there are disputed issues of fact to be resolved by the factfinder. Accordingly, we reverse and remand.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  *Moyer-Related Entities and Operations*

We begin with a more detailed explanation of the ownership structure of the 1000 Broadway Building, which we have previously described as "labyrinthine." *Hawkins v. 1000 Limited Partnership*, 282 Or App 735, 738, 388 P3d 347 (2016), *rev den*, 361 Or 543 (2017). We explain that complex structure as best we can in the text below, but the reader may also benefit by considering the flow chart from plaintiff's complaint that is attached as an appendix to this opinion. The basic structure of the various related entities is undisputed.[4]

---

[2] First Republic did not appeal the order denying its petition to compel arbitration. Long after the trial court granted plaintiff summary judgment on its conversion claim and after briefing had been completed on the separate appeal of the arbitration issue, 1000 Broadway Building LP dismissed its separate appeal.

[3] The trial court denied plaintiff's motion for summary judgment on additional claims, including unjust enrichment and money had and received. Those rulings are not at issue in this appeal.

[4] Many of the facts that provide background to this appeal are undisputed. In addition, we discuss procedural facts in this introduction that are undisputed. Where we discuss facts at issue in the summary judgment dispute, those facts, where contested, are stated in the light most favorable to the party opposing

The 1000 Broadway Building is owned by 1000 Broadway Building LP. Eleven trusts established for the benefit of Thomas Moyer Sr.'s grandchildren collectively hold a 50 percent interest (or 4.55 percent each) in 1000 Broadway Building LP as limited partners. The trustee of four of those trusts is the plaintiff in this case. A company called 1000 Limited Partnership (1000 LP) is the general partner of 1000 Broadway Building LP and holds the remaining 50 percent interest in it.

Under 1000 Broadway Building LP's partnership agreement, 1000 LP, as the general partner, has all "rights, power and authority to manage the business and affairs of the Partnership." In accordance with that agreement, 1000 LP is authorized to "enter into agreements to manage, maintain, lease and otherwise deal with Partnership property" and to "delegate duties and responsibilities * * * necessary for the proper operation and management of the business of the Partnership," which includes management and maintenance of the 1000 Broadway Building. By contrast, the limited partners—the grandchildren's trusts—are not entitled to "take part in, nor interfere in any manner with, the management, control, conduct or operation of [1000 Broadway Building LP]."

Four trusts established on behalf of Thomas Moyer Sr.'s children collectively hold a 99 percent interest in 1000 LP as limited partners. The remaining one percent interest in 1000 LP is held by its general partner, 1000, Inc., an Oregon corporation. Under 1000 LP's partnership agreement, 1000, Inc. has sole authority to manage the affairs of the partnership to the exclusion of the limited partners.

1000, Inc., in turn, is wholly owned by the TPM Living Trust. First Republic, the primary defendant in plaintiff's derivative suit, was named successor trustee of the TPM Living Trust in 2007. First Republic became trustee in 2010, at which point First Republic became responsible for administering the TPM Living Trust.

---

summary judgment, First Republic. *Fenimore v. Blachly-Lane County C.E.A.*, 297 Or App 47, 50-51, 441 P3d 699 (2019).

Following the flow chart up from the 1000 Broadway Building at the bottom to the TPM Living Trust at the top (or vice versa from top to bottom), the upshot is that the TPM Living Trust, and First Republic through its trustee role, effectively manages the 1000 Broadway Building. This is true despite the fact that the TPM Living Trust is a very remote and limited owner (through other entities) of the 1000 Broadway Building LP partnership that owns the building.

B.   *Trustee and Management Fees at Issue in This Case*

In October 2010, First Republic and Vanessa Sturgeon (Moyer Sr.'s granddaughter, acting as his attorney-in-fact) agreed that First Republic would be compensated for its services as trustee to the TPM Living Trust at a rate of .35 percent of the trust's assets for the first two years, followed by a .20 percent fee in subsequent years. The initial .35 percent fee was set to expire as of July 30, 2012.

In April 2012, First Republic and Sturgeon (again acting for Moyer Sr.) renegotiated some of the terms of the fee by decreasing the fee gradually from .35 percent to .275 percent beginning on August 1, 2012, and for the next two years before dropping to the originally negotiated end point of .20 percent.

At the same time in April 2012, 1000 LP, acting as the general partner for 1000 Broadway Building LP and 1000, Inc., entered into a property management agreement (PMA) by which 1000, Inc. would manage the 1000 Broadway Building. 1000, Inc. agreed to provide both property management and asset management services. As a practical matter, the 1000 Broadway Building requires substantial property and asset management services. Property management services include repairs, purchasing supplies, and collecting rents from tenants. Asset management services include managing finances and budgets, hiring consultants, preparing reports and market analyses, prosecuting and settling any claims related to the asset, hiring agents including attorneys and brokers, and other related responsibilities.

Under the PMA, 1000 Broadway Building LP appointed 1000, Inc. as the exclusive agent for property

management services, in exchange for three percent of the 1000 Broadway Building's gross monthly revenues, and for asset management services, in exchange for .35 percent of the building's value. 1000, Inc. provided those services under the control and supervision of First Republic.[5]

First Republic instructed 1000 Broadway Building LP to directly pay First Republic for the asset management services it provided through 1000, Inc. under the PMA. To that end, First Republic periodically instructed 1000, Inc. to issue checks in 1000 Broadway Building LP's name to First Republic. In certain communications between First Republic and 1000, Inc., First Republic provided invoices and referred to payment by 1000 Broadway Building LP of "trustee's fees" or "trustee's fees attributable to the management of the 1000 [Broadway Building]." That payment model was made possible by the ownership structure described above—1000, Inc. is the general partner of 1000 LP, which is the general partner of 1000 Broadway Building LP. First Republic retained an outside accountant to advise it on how to source its fees.

## C.   *Plaintiff's Derivative Lawsuit*

### 1.   *Basis for plaintiff's action*

Plaintiff's derivative lawsuit alleged that First Republic had converted funds from 1000 Broadway Building LP by (1) wrongfully exacting "trustee fees" from the 1000 Broadway Building LP and (2) wrongfully passing legal fees attributable to other Moyer-related entities onto 1000 Broadway Building LP.

Plaintiff alleged that First Republic's exaction of "trustee fees"—that is, fees associated with First Republic's administration of the TPM Living Trust—from 1000 Broadway Building LP was wrongful. It alleged that was so because "there is no trust relationship between First Republic and the 1000 Broadway Building Limited Partnership" and

---

[5] To make this case somewhat more confusing, the .35 percent asset management fee is the same percentage as the originally negotiated .35 percent trustee fee for First Republic's work for the trust. That fact, as explained further below, is significant to the core dispute between the parties regarding the nature of the payments that were made by 1000 Broadway Building LP to First Republic.

1000 Broadway Building LP received no consideration for the payments to First Republic.

Plaintiff also alleged in its complaint that First Republic had converted money from 1000 Broadway Building LP by requiring it to pay for legal fees "for entities other than 1000 Broadway Building [LP]." According to the declaration of First Republic's general manager, First Republic typically allocated legal fees incurred "by or for the benefit of" the entities controlled by the TPM Living Trust using a "fee calculator." Under the methodology developed by First Republic, fees submitted by attorneys representing a specific Moyer entity for an entity-specific matter are allocated entirely to that entity, and fees related to First Republic's oversight of the entire Moyer portfolio were processed and allocated using the fee calculator.

First Republic directed the payment of legal fees by 1000 Broadway Building LP. In some instances, attorneys billed 1000 Broadway Building LP for legal work for that specific entity and First Republic directed payment. When legal bills were directed more generally to the TPM Living Trust or to First Republic as trustee for that trust and the bills were for legal work related to First Republic's oversight of the entire trust portfolio of assets or general administration or litigation involving those assets, First Republic would allocate the legal fees according to the fee-calculator formula based on the relative market value of the particular entity within the overall portfolio of entities owned or controlled by the trust.

When a particular trust asset was more directly involved in particular litigation than others, First Republic might deviate from the schedule for the allocation when it deemed that approach more equitable. For instance, there was substantial litigation involving a number of trust assets that was known to the parties as the "Anderson litigation." The invoices for the Anderson litigation were collected by First Republic and it allocated 50 percent to 1000 Broadway Building LP's funds and divided the remaining 50 percent among other entities that had been involved in the litigation using the formula for their relative market values. In the complaint, plaintiff alleged that this approach resulted in

1000 Broadway Building LP paying for legal services "rendered for entities other than 1000 Broadway Building [LP]."

2. *First Republic's motion to compel arbitration and plaintiff's competing summary judgment motion*

With that factual background in mind, we turn to the undisputed procedural facts that give rise to the issues on appeal, namely the trial court's rulings on arbitration issues, summary judgment, and the relative timing of those decisions.

Early in the litigation, plaintiff indicated that it would seek summary judgment on its claims and moved to file a summary judgment motion under seal. Just after plaintiff filed that motion, First Republic moved to compel arbitration under the arbitration clause of 1000 Broadway Building LP's partnership agreement. With the court's permission, plaintiff later did file its summary judgment motion under seal, seeking summary judgment on all of its claims.

1000 Broadway Building LP initially took no substantive position on First Republic's motion to compel arbitration, but rather argued only that the trial court should consider the motion to compel arbitration *before* considering the summary judgment motion. 1000 Broadway Building LP made clear that "[t]his memo is NOT on the merits of arbitrability but only on the timing [of the consideration of the arbitration and summary judgment motions]." (Uppercase in original.) Later, 1000 Broadway Building LP joined First Republic's motion to compel arbitration. It also filed a reply brief that changed course and took a substantive position asking the court to compel arbitration of plaintiff's dispute with First Republic. In response, plaintiff moved to strike 1000 Broadway Building LP's reply brief. Plaintiff contended that it was acting derivatively on behalf of 1000 Broadway Building LP, which was only a nominal party in the litigation, and that, as such, 1000 Broadway Building LP did not have authority to take a substantive position that opposed plaintiff's arguments and litigation choices.

The trial court considered and then denied First Republic's motion to compel arbitration, concluding that plaintiff's action was not subject to arbitration. The court

then rejected 1000 Broadway Building LP's position as moot, explaining that 1000 Broadway Building LP had initially made a procedural argument regarding the timing of the court's rulings, which was no longer a live issue now that the court had resolved the question of arbitrability prior to reaching plaintiff's summary judgment motion. The trial court stated:

> "Defendant 1000 Broadway Building [LP]'s Joinder in First Republic's Motion to Compel Arbitration and Memorandum on Timing of Motion to Compel Arbitration was therefore considered by the Court on that limited basis [relating to procedural timing], and rendered moot by virtue of the denial of First Republic's Motion to Compel Arbitration on the merits, given that 1000 Broadway Building [LP]'s joinder was solely procedural in nature."

The court never reached the merits of 1000 Broadway Building LP's arguments in favor of the arbitration of the dispute between plaintiff and First Republic.

The trial court further granted plaintiff's motion to strike 1000 Broadway Building LP's later attempt to take a substantive position on the arbitrability question in a reply brief. The trial court ruled:

> "Plaintiff's Motion to Strike Defendant 1000 Broadway Building [LP]'s Reply Memorandum in Support of Motion to Compel Arbitration and Supporting Declarations is **GRANTED**."

(Boldface and uppercase in original.)

First Republic attempted to file an interlocutory appeal of the trial court's ruling denying its motion to arbitrate plaintiff's claims, but, due to a clerical error, that appeal was not timely filed. 1000 Broadway Building LP, however, did file a timely interlocutory appeal. First Republic then filed a motion in the trial court asking it to abate consideration of plaintiff's motion for summary judgment pending resolution of that appeal. First Republic argued that "[t]he filing of the appeal by Defendant 1000 Broadway Building [LP] gives jurisdiction of the cause to the Court of Appeals," divesting the court of jurisdiction to "proceed with respect to the Motion for Summary Judgment directed at Defendant First Republic Bank." The trial court denied the motion.

3.   *The trial court's grant of plaintiff's motion for sum-mary judgment on its conversion claim*

The trial court then proceeded to consider plaintiff's motion for summary judgment. In its motion, plaintiff contended, among other things, that First Republic had committed conversion as a matter of law. Plaintiff argued that First Republic was not entitled to exact trustee fees—that is, fees related to the administration of the trust—from other than the trust property. Because 1000 Broadway Building LP was not a beneficiary of the trust and its accounts did not constitute trust property, plaintiff reasoned, First Republic was not permitted to charge 1000 Broadway Building LP trustee fees. Plaintiff maintained that the disputed fees could only be seen as improper trustee fees because that is what First Republic called them in various invoices and other communications and because the fees were calculated in the same manner as the trustee fees described in the trust agreement between First Republic and the TPM Living Trust. As noted above, plaintiff also alleged that First Republic had converted funds from 1000 Broadway Building LP by erroneously passing fees for legal services performed by third-party law firms on behalf of other entities onto 1000 Broadway Building LP.

In opposing summary judgment, First Republic contended that there were disputed issues of fact regarding the nature of the fees charged. First Republic submitted a declaration that stated that the fees charged were not, in fact, trustee fees, but asset management fees that were charged under the PMA. First Republic contended that it was paid asset management fees in accordance with the PMA between 1000 Broadway Building LP and 1000, Inc. by which 1000, Inc. would manage the 1000 Broadway Building asset. First Republic maintained that it was paid those asset management fees directly by and through 1000, Inc. for asset management work that it did for 1000, Inc. Therefore, according to First Republic, the fees at issue were properly paid asset management fees and were not converted trust funds.

First Republic also contended that it properly allocated attorney fees to each entity on whose behalf legal work was done. It submitted a declaration that described

the fee calculator for allocating fees among different entities originally owned by Thomas Moyer Sr. and the approach for directing the payment of legal bills when the legal work was more specific to a particular entity. First Republic further noted that it received no benefit for attorney fees that were paid to third-party law firms. First Republic argued that questions of fact regarding the nature and payment of the asset management fees and attorney fees prevented the court from awarding plaintiff summary judgment on its claims.

The trial court granted plaintiff's motion for summary judgment on its conversion claim but denied plaintiff's motion as to its remaining claims for unjust enrichment, money had and received, and declaratory and injunctive relief.

## II.   ANALYSIS

### A.   *First Assignment of Error—Jurisdiction*

First Republic's first assignment of error challenges the trial court's jurisdiction to enter summary judgment against it while 1000 Broadway Building LP's appeal from the court's order regarding arbitration was pending. First Republic contends that 1000 Broadway Building LP's appeal divested the trial court of jurisdiction over the "cause" on appeal. *See* ORS 19.270(1) ("The Supreme Court or the Court of Appeals has jurisdiction of the cause when the notice of appeal has been served and filed."). An issue of jurisdiction is a legal question, and we review the trial court's decision to continue to exercise jurisdiction for legal error. *State ex rel Gattman v. Abraham*, 302 Or 301, 303, 729 P2d 560 (1986) (considering the jurisdictional issue as a question of law).

First Republic contends that "it should be uncontroversial that the notice of appeal filed by [1000 Broadway Building] LP divested the court of jurisdiction over [1000 Broadway Building] LP" and that, "in the unique circumstances" of this case, the "cause" must include plaintiff's claims against First Republic. We agree that this case presents unique circumstances. However, we disagree that, in these unique circumstances, 1000 Broadway Building LP's appeal of the particular trial court order at issue here

divested the trial court of jurisdiction to decide the summary judgment dispute between First Republic and plaintiffs.

As a general rule, the filing of a notice of appeal divests the trial court of jurisdiction over the "cause" and transfers jurisdiction to the appellate court. *See* ORS 19.270(1) ("The Supreme Court or the Court of Appeals has jurisdiction of the cause when the notice of appeal has been served and filed."); *Gattman*, 302 Or at 310-11 (explaining that the statute giving the appellate court "jurisdiction of the cause" on appeal does so "to the exclusion of the lower court"). At the same time, a limited interlocutory appeal of a trial court order does not ordinarily deprive the trial court of jurisdiction except with respect to the matters that are the subject of the appeal. *Id*. at 311 ("It was not the intention [of the legislature] to oust the trial court of jurisdiction of those parts of the litigation which are not directly involved in the appeal."). As the Supreme Court explained in *Gattman*, an appeal from a trial court order or judgment only "give[s] the appellate court jurisdiction of the *issue or subject matter* of the appeal." *Id*. (emphasis added). That is because the applicable statute, ORS 19.270, divests the trial court of jurisdiction only over "the cause," which may include "a case or proceeding" but can also refer more narrowly to "any part" thereof. *Id*.; *accord State v. Branstetter*, 332 Or 389, 403, 29 P3d 1121 (2001) ("The 'cause' is not always the entire case.").

With respect to arbitration rulings by the trial court, ORS 36.730(1)(a) provides that an appeal may be taken from "[a]n order denying a petition to compel arbitration." Those appeals must be "taken as provided in ORS chapter 19." ORS 36.730(2). Chapter 19 establishes, in relevant part, the procedural requirements of an appeal, including timing, ORS 19.255, fees, ORS 19.265, and notice, ORS 19.250. As noted, ORS 19.270 provides that the appellate courts assume jurisdiction of "the cause" once an appeal is filed to the exclusion of the trial court that entered the judgment or order being appealed. Assuming that that rule applies when a party appeals from an order denying a petition to compel arbitration, we conclude that 1000 Broadway Building LP's interlocutory appeal in this case did not require the trial court to stay summary judgment proceedings.

We note first that First Republic did not appeal the trial court's ruling on the arbitrability of plaintiff's claims.[6] Only 1000 Broadway Building LP filed a timely appeal of that order. Therefore, we must consider what was at "issue" or what was the "subject matter" of 1000 Broadway Building LP's appeal of that order.

With respect to 1000 Broadway Building LP, the trial court first ruled that 1000 Broadway Building LP's motion to join First Republic's petition to compel arbitration was moot. That decision was based on the fact that 1000 Broadway Building LP initially sought to join First Republic's petition solely to make the procedural argument that the court should resolve questions of arbitrability *before* proceeding to summary judgment, which the court did when it denied First Republic's petition. The court expressly indicated that its ruling as to 1000 Broadway Building LP did not involve the merits of whether plaintiff's claims were arbitrable, but only considered the timing of whether it should resolve the arbitration or summary judgment issue first.

The other issue in the trial court's ruling involved its decision to strike 1000 Broadway Building LP's reply brief, which *did* take a substantive position on the merits of the arbitrability of the dispute between plaintiff and First Republic. As noted above, plaintiff argued that the trial court must strike that brief because plaintiff was acting derivatively on behalf of 1000 Broadway Building LP and, as such, that entity was merely a nominal party who could not take substantive positions against plaintiff in violation of a claimed duty of neutrality. The trial court agreed with plaintiff's position and struck 1000 Broadway Building LP's reply brief.

Thus, the issues or subject matters before us in the 1000 Broadway Building LP appeal were (1) whether the

---

[6] Because First Republic did not appeal the denial of its petition to compel arbitration, we do not consider whether an appeal by First Republic would have ousted the trial court of jurisdiction to proceed to summary judgment on plaintiff's claims against First Republic. *Cf. Assisted Living Concepts, Inc. v. Fellows*, 244 Or App 475, 483, 260 P3d 726, *rev den*, 351 Or 318 (2011) (holding that the appellant's appeal of an order denying arbitration by a circuit court did not divest the jurisdiction of the probate court that was considering a related discovery dispute while observing that the circuit court was divested of jurisdiction).

trial court erred in concluding that 1000 Broadway Building LP's initial procedural argument regarding the timing of the court's consideration of the arbitration and summary judgment motions was moot and (2) whether the trial court erred in striking 1000 Broadway Building LP's substantive reply brief on the merits of the arbitrability dispute. With respect to those issues, the Court of Appeals took jurisdiction to the exclusion of the trial court.[7]

1000 Broadway Building LP's appeal effectively split the case into two separate and parallel parts. The first part involved 1000 Broadway Building LP's appeal from the trial court's ruling that 1000 Broadway Building LP's procedural arguments were moot and its reply brief was improper. The second part involved the merits of plaintiff's action against First Republic. The question of whether plaintiff was entitled to summary judgment on any or all of its claims presented to the trial court a distinct set of issues involving a different defendant from 1000 Broadway Building LP's interlocutory appeal. As a result, the trial court was not divested of jurisdiction with respect to that second part of the litigation. *Cf. May Trucking Co. v. Northwest Volvo Trucks, Inc.*, 238 Or App 21, 33, 241 P3d 729 (2010), *rev den*, 350 Or 130 (2011) (explaining that, where the plaintiff appealed the "part of the judgment" dismissing claims against one party but not the "part of the judgment awarding plaintiff damages," the trial court lost jurisdiction only over "the portion of the litigation" that was "involved in the appeal").

Accordingly, whether or not to stay proceedings, at least under the circumstances of this case, is better seen as a matter within the discretion of the trial court. *See Gattman*, 302 Or at 312 ("The trial court has discretion to determine if that claim should be set for trial or if the trial should be postponed until the appeal * * * is concluded."). First Republic contends only that the trial court lost jurisdiction upon 1000 Broadway Building LP's interlocutory appeal. We reject that argument. First Republic does not contend that the trial court, if it had discretion whether to stay the case, as we conclude it did, abused its discretion in proceeding to

---

[7] After this appeal was filed, 1000 Broadway Building LP moved to dismiss its interlocutory appeal, which we granted.

consider the summary judgment issue. Consequently, we do not reach that issue.

B.  *Second Assignment of Error—Motion for Summary Judgment*

Having determined that the trial court had jurisdiction to rule on plaintiff's motion for summary judgment on its conversion claim, we turn to defendants' assignment of error challenging that ruling. Under Oregon law, the tort of conversion is defined as follows:

> "'(1)   Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.'
>
> "'(2)   In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important:'
>
> "'(a)   the extent and duration of the actor's exercise of dominion or control;'
>
> "'(b)   the actor's intent to assert a right in fact inconsistent with the other's right of control;'
>
> "'(c)   the actor's good faith;'
>
> "'(d)   the extent and duration of the resulting interference with the other's right of control;'
>
> "'(e)   the harm done to the chattel;'
>
> "'(f)   the inconvenience and expense caused to the other.'"

*Becker v. Pacific Forest Industries, Inc.*, 229 Or App 112, 116, 211 P3d 284 (2009) (quoting *Restatement (Second) of Torts* § 222A (1965)). Although a typical conversion claim involves interference with the right to control a chattel, money can be converted "under certain circumstances," namely where the money was "wrongfully received by the party charged with conversion or *** such party was under obligation to return the specific money to the party claiming it." *Wood Ind'l Corp. v. Rose*, 271 Or 103, 108, 530 P2d 1245 (1975).

When a case is before us following a trial court order granting a motion for summary judgment, we review the record to determine whether there are any genuine issues

of material fact and whether the moving party is entitled to judgment as a matter of law. *Fenimore*, 297 Or App at 50. No genuine issue of material fact exists if, viewing all relevant facts and reasonable inferences in the light most favorable to the nonmoving party—here, First Republic—no reasonable juror could return a verdict for the nonmoving party on the matter that is the subject of the motion for summary judgment. *Id.* at 50-51. Additionally, in this case, plaintiff was seeking summary judgment on a claim which plaintiff had the burden of production and persuasion at trial. "Accordingly, our task on appeal, as circumscribed by our standard of review, is to determine whether the uncontroverted evidence presented by [plaintiff] in support of [plaintiff's] motion for summary judgment is such that all reasonable factfinders would have to find in [plaintiff's] favor." *Williams v. CBS Corp.*, 286 Or App 1, 7, 398 P3d 411 (2017) (internal quotation marks omitted).

Viewing the facts in the record and drawing reasonable inferences in the light most favorable to First Republic, as we must, we conclude that there is at least a triable issue of fact whether First Republic wrongfully received money from 1000 Broadway Building LP. We reiterate the relevant facts: Under the PMA between 1000 Broadway Building LP and 1000, Inc., 1000, Inc. was entitled to "compensation" for property and asset management services. 1000, Inc. provided those services under the control and supervision of First Republic. First Republic periodically instructed 1000, Inc. to issue checks from 1000 Broadway Building LP to First Republic in amounts that were calculated consistently with the asset management fee described in the PMA. In certain communications with 1000, Inc., including emails accompanying invoices, First Republic referred to the fees as "trustee's fees" or "trustee's fees attributable to the management of the 1000 [Broadway Building]." According to the sworn declaration of First Republic's managing director, however, those fees were for the asset management services provided by 1000, Inc.[8]

---

[8] Plaintiff argues that that statement in the managing director's declaration "created a sham issue" because the declaration is internally inconsistent with respect to whether First Republic exacted trustee fees or asset management fees from 1000 Broadway Building LP. The declaration arguably is internally

Under Oregon law, a trustee is entitled to trustee fees paid "out of the trust property" for "[e]xpenses that were properly incurred in the administration of the trust." ORS 130.640(1); *accord Restatement (Third) of Trusts* § 38 (2003) ("A trustee is entitled to reasonable compensation out of the trust estate for services as trustee."). Conversely, a trustee is not entitled to compensation for expenses incurred in the administration of a trust from sources other than the trust property.

The question whether it was wrongful for First Republic to charge 1000 Broadway Building LP the disputed fees at issue in this case is complicated by First Republic's use of the term "trustee fee" in numerous communications with 1000, Inc. That potential confusion is compounded by the fact that the asset management fees under the PMA are calculated at the same rate as the trustee fees in the trust agreement between First Republic and the TPM Living Trust, namely .35 percent of the value of the 1000 Broadway Building. However, the mere use of the term "trustee fee" by First Republic and the similarity between the fees charged and those described in the trust agreement does not conclusively establish as a matter of law that the disputed fees were for services related to administration of the TPM Living Trust as opposed to other services, including the asset management services described in the PMA. First Republic presented evidence that asset management services are necessary to the operation of the 1000 Broadway Building and that 1000, Inc., which is controlled by First Republic, provided the asset management services described in the PMA.

_____

inconsistent to the limited extent that it at times appears to refer to the disputed fees as trustee fees and describes arrangements between First Republic and the TPM Living Trust related to management of the trust. But nothing in the declaration "directly contradict[s]" or is "clearly inconsistent" with any prior sworn statements. *See Checkley v. Boyd*, 198 Or App 110, 130-31, 107 P3d 651, *rev den*, 338 Or 583 (2005) (describing the "sham" affidavit standard set out in *Henderson-Rubio v. May Dept. Stores*, 53 Or App 575, 585, 632 P2d 1289 (1981)). Potential contradictions or ambiguities within the managing director's declaration raise a question of credibility for the factfinder and are not for the trial court to resolve at summary judgment. *See Taal v. Union Pacific Railroad Co.*, 106 Or App 488, 494, 809 P2d 104 (1991) ("The line between credibility questions and 'sham' assertions of facts is nonexistent. Credibility questions are for the fact finder; they are not for the court to resolve in dealing with contradictory evidence in a summary judgment setting.").

It necessarily follows that *some* entity is entitled to asset management fees, and there is no evidence in the summary judgment record that 1000, Inc. was separately compensated by 1000 Broadway Building LP for those services such that the fees charged by First Republic must be attributable to some other service unrelated to asset management. Nor is there conclusive evidence in the record that First Republic was not ultimately entitled to those fees as the entity supervising 1000, Inc. or that the fees were for some improper purpose. To the contrary, the aforementioned declaration of First Republic's manager is evidence from which a reasonable juror could conclude that the disputed fees were for services rendered as contemplated by the PMA.

To summarize, even assuming that it would amount to conversion as a matter of law if First Republic charged 1000 Broadway Building LP for services related to the administration of the TPM Living Trust, the fact that First Republic at times labeled the disputed fees as trustee fees rather than asset management fees does not conclusively establish that those fees were improper. A reasonable juror could resolve that question in either party's favor. For that reason, the trial court erred in granting plaintiff's motion for summary judgment.

The trial court also erred when it granted summary judgment to plaintiff with respect to the disputed attorney fees allocated to 1000 Broadway Building LP by First Republic. Plaintiff's bare assertion in the complaint that the legal fees were attributable to services provided to "other entities" than 1000 Broadway Building LP is not clearly supported by the summary judgment record. There is evidence in the record that the legal fees paid by 1000 Broadway Building LP were related to litigation involving 1000 Broadway Building LP, at least indirectly, and that the portion of those fees invoiced to 1000 Broadway Building LP by First Republic was equitable. In short, the evidence at summary judgment does not conclusively establish that it was "wrongful" for First Republic to require 1000 Broadway Building LP to pay those particular fees.

Furthermore, it does not appear from the record that First Republic ever "received" the disputed legal fees.

*See Wood Ind'l Corp.*, 271 Or at 108 (conversion of money occurs where the money was "wrongfully received"). Rather, there is evidence that First Republic sent invoices for legal fees provided by attorneys to 1000, Inc. with instructions on how to pay those fees directly to the attorneys and that 1000, Inc. complied with those instructions. Plaintiff failed to demonstrate at summary judgment that that circumstance amounted to conversion as a matter of law. Accordingly, a reasonable juror could conclude that First Republic did not commit conversion, and the grant of summary judgment on plaintiff's claim was in error.

## III.   CONCLUSION

To summarize, the trial court had jurisdiction to proceed to summary judgment on plaintiff's conversion claim against First Republic notwithstanding 1000 Broadway Building LP's interlocutory appeal from the court's ruling on the arbitrability of plaintiff's claim. However, the trial court erred when it granted plaintiff's motion. At the very least, the summary judgment record presents a triable issue of fact whether First Republic wrongfully received money from 1000 Broadway Building LP, including whether First Republic improperly charged 1000 Broadway Building LP fees related to administration of the TPM Living Trust or passed on to 1000 Broadway Building LP legal fees for services provided to other entities.

Reversed and remanded.

APPENDIX

The ownership structure of the 1000 Broadway Building is as follows:

